SARAH H. COFFMAN AND HARSE H. COFFMAN, PLAINTIFFS v. W. EARL ROBERSON, M.D., P.A., WILLIAM EARL ROBERSON, M.D., AND STEPHEN L. BREWBAKER, M.D., DEFENDANTS

SARAH H. COFFMAN AND HARSE H. COFFMAN, PLAINTIFFS v. DELANEY RADIOLOGISTS GROUP, L.L.P.; AND MARK WILLIAM RAGOZZINO, M.D., DEFENDANTS

No. COA02-100

(Filed 5 November 2002)

**1. Medical Malpractice; Witnesses— expert—doctor with same specialty**

The trial court did not err in a medical malpractice action by admitting the medical expert testimony of a doctor under N.C.G.S. § 8C-1, Rule 702, because: (1) the witness doctor spe-

cialized in the same specialty, obstetrics/gynecology, as defendant doctor; and (2) during the year preceding 29 March 1997, the witness doctor spent all of his professional time teaching at an accredited health professional school and the majority of it teaching from the vantage point of OB/GYN.

## 2. Medical Malpractice; Witnesses— expert—doctor familiar with community standard

The trial court did not err in a medical malpractice action by admitting the medical expert testimony of two doctors even though defendants contend they were not familiar with the community standard as required by N.C.G.S. § 8C-1, Rule 702, because: (1) the doctor that practiced in Charlotte, North Carolina satisfied the requirements by testifying that he was familiar with the standard of care with respect to obstetrics, gynecology, and sonography in communities similar to Wilmington, North Carolina, and that he based his opinion on internet research about the size of the hospital, the training program, and the Area Health Education program; and (2) the other doctor, a board certified specialist in obstetrics/gynecology who was licensed to practice in California and Colorado, also satisfied the requirements by testifying that he was familiar with the standard of care in communities similar to Wilmington.

## 3. Discovery— medical malpractice—list of expert witnesses

The trial court did not err in a medical malpractice action by admitting the testimony of two doctors as expert witnesses even though they were not listed on pretrial discovery in the action against defendants but they were listed in plaintiffs' action against another doctor which was consolidated with the action against defendants, because: (1) the purpose of the discovery rules under N.C.G.S. § 1A-1, Rule 26(f1) was achieved and defendants were not prejudiced by any actions of plaintiffs in failing to timely notify defendants of experts in the action; (2) all parties had the opportunity to depose both doctors as experts before trial; and (3) defendants cannot claim surprise by the expert testimony of either doctor and have failed to show that the trial court abused its discretion in allowing into evidence the testimony of both doctors.

## 4. Medical Malpractice— judgment notwithstanding verdict— motion for new trial—sufficiency of evidence

The trial court did not err in a medical malpractice action by denying defendants' motion for judgment notwithstanding the verdict, or in the alternative for a new trial, because plaintiffs presented sufficient evidence for the jury to determine the issue of the negligence of defendants.

## 5. Costs— medical malpractice—expert witness fees—subpoena—fees unrelated to expert testimony

The trial court did not err in a medical malpractice action by granting plaintiffs' motion for costs even though defendants contend there is no evidence in the record that plaintiffs' experts testified at trial pursuant to a subpoena as required by law and that plaintiffs may not recover expert witness fees that are unrelated to the testimony before the court, because: (1) the record clearly reflects, through the sworn affidavit of plaintiffs' attorney, that all of the expert witnesses testified at trial pursuant to a subpoena, and plaintiffs' attorney attached to his affidavit the signed return receipts as proof of service; and (2) defendants failed to show the trial court abused its discretion in allowing costs to be taxed to defendants for court costs, mediation costs, deposition costs, expert fees and expenses, witnesses' mileage expenses, service of subpoenas, trial exhibits, and travel expenses for hearings that were properly allowed under the authority of N.C.G.S. § 6-20 and N.C.G.S. § 7A-305.

Appeal by defendants from judgment entered 7 December 2000 by Judge Wiley F. Bowen in the Columbus County Superior Court. Writ of Certiorari granted 3 October 2001. Heard in the Court of Appeals 14 October 2002.

*Law office of William F. Maready, by Gary V. Mauney, for plaintiffs-appellees.*

*Wilson & Iseman, L.L.P., by G. Gray Wilson and Kevin B. Cartledge, for defendants-appellants.*

TYSON, Judge.

## I. Facts

On 28 May 1997, Sarah H. Coffman ("Sarah") went to her treating obstetrician/gynecologist, W. Earl Roberson, M.D. ("Dr. Roberson"),

COFFMAN v. ROBERSON

[153 N.C. App. 618 (2002)]

after a urine pregnancy test showed she was pregnant. Dr. Roberson performed an hCG test which revealed that the human chorionic gonadotropin hormone level in her blood was elevated, suggestive of pregnancy, although his physical exam "did not show a pregnancy in the uterus." Dr. Roberson referred Sarah for an ultrasound test. On 29 May 1997, an ultrasound was performed by Mark W. Ragozzino, M.D. ("Dr. Ragozzino") that led him to suspect that Sarah had an ectopic pregnancy. Dr. Roberson was called in his car on the way to vacation and was read the ultrasound report over the phone. He never reviewed the ultrasound personally. The report stated that the radiologist "strongly suspect[ed]" an ectopic pregnancy. While still driving to vacation, Dr. Roberson called Sarah to discuss the ultrasound. Because of the danger from an ectopic pregnancy, Dr. Roberson referred Sarah to Stephen L. Brewbaker, M.D. ("Dr. Brewbaker") who, based on the opinion of Dr. Roberson, prescribed the administration of a shot of Methotrate to terminate the pregnancy which was administered on 30 May 1997 at New Hanover Regional Medical Center. In late June 1997, Sarah began having cramps and feeling sick. On 26 June 1997, a second ultrasound revealed an intrauterine pregnancy without a heartbeat. A dilation and evacuation procedure was performed by Dr. Roberson on Sarah on 27 June 1997.

On 13 October 1998, Sarah and her husband Harse H. Coffman ("plaintiffs") filed a complaint alleging medical malpractice against Dr. Roberson, W. Earl Roberson, M.D. P.A. ("Roberson P.A."), Dr. Brewbaker, Dr. Ragozzino, and Delany Radiologists Group, L.L.P. ("Delany"). On 3 August 1999, plaintiffs voluntarily dismissed without prejudice their claims as to Dr. Ragozzino and Delaney. On 28 September 1999, plaintiffs filed a separate complaint against Dr. Ragozzino and Delany. On 21 July 2000, the trial court granted plaintiffs' motion to consolidate the two actions pursuant to Rules 20 and 21 of the North Carolina Rules of Civil Procedure. On 23 October 2000, a jury returned a verdict finding that plaintiff Sarah was injured by the negligence of Dr. Roberson and Roberson P.A. in the amount of $250,000. It further found Sarah was not injured by the negligence of Drs. Brewbaker and Ragozzino. It also found plaintiff Harse Coffman was not injured by the negligence of any defendant. On 7 December 2000, the trial court denied defendants' Dr. Roberson and Roberson, P.A. motion for judgment notwithstanding the verdict ("JNOV") and their motion for a new trial. The trial court also granted Sarah's motion for costs against defendants Dr. Roberson and Roberson, P.A.

Only defendants Dr. Roberson and Roberson, P.A. appealed. On 27 August 2001, the trial court dismissed defendants' appeal. On 3 October 2001, this Court granted a Writ of Certiorari to Dr. Roberson and Roberson, P.A. only.

## II. Issues

Defendants contend that the trial court erred by (1) allowing Dr. Linton to testify without being properly qualified as an expert witness; (2) allowing Dr. Horner and Dr. Otto to testify because they were not familiar with the community standard of care; (3) allowing Dr. Warren and Dr. Tonn to testify without a limiting instruction because they were not properly designated during discovery; (4) allowing Dr. Tonn and Dr. Warren to testify to plaintiffs' damages; (5) denying defendants' motion for JNOV; and (6) awarding costs to plaintiff.

## III. Testimony of Dr. Linton

[1] Defendants contend that the trial court erred by admitting the medical expert testimony of Eugene Linton, M.D. ("Dr. Linton") "on the ground that he was not properly qualified under Rule 702 of the North Carolina Rules of Evidence." We disagree.

Rule 702 of the North Carolina Rules of Evidence states in part:

(b) In a medical malpractice action as defined in G.S. 90-21.11, a person shall not give expert testimony on the appropriate standard of health care as defined in G.S. 90-21.12 unless the person is a licensed health care provider in this State or another state and meets the following criteria:

(1) If the party against whom or on whose behalf the testimony is offered is a specialist, the expert witness must:

a. Specialize in the same specialty as the party against whom or on whose behalf the testimony is offered; or

b. Specialize in a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients.

(2) During the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness must have devoted a majority of his or her professional time to either or both of the following:

COFFMAN v. ROBERSON

[153 N.C. App. 618 (2002)]

a. The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, the active clinical practice of the same specialty or a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients; or

b. The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

Ordinarily, the determination of whether a witness qualifies as an expert lies within the discretion of the trial court. *Edwards v. Wall*, 142 N.C. App. 111, 115, 542 S.E.2d 258, 262 (2001). "However, '[w]here an appeal presents questions of statutory interpretation, full review is appropriate, and [a trial court's] "conclusions of law are reviewable *de novo.*" ' " *Id.* (Citations omitted).

At trial, Dr. Linton testified as follows:

Q. And have you continued any work in the medical field since [31 December 1994 when you retired from private practice]?

A. Yes, I have. I did some volunteer teaching at the medical school at Bowman Gray School of Medicine.

. . .

Q. Were you assisting in that program from the vantage point of an OB/GYN?

A. Yes, I was. We discussed cases other than obstetrics/gynecology but, again, as a primary care physician for women from a point of view of obstetric/gynecology, you must have a broad grasp of the other medical fields other than just the obstetrics/gynecology.

Q. Were you continuing in that endeavor the year prior to May of 1997?

A. Yes. The year 1997, that school year, I was in, I think, both semesters of that particular school year.

Q. Was that a majority of your professional time during that period of time?

A. It didn't take up a great deal of time. But that's all I did professionally during that period of time.

Dr. Linton specialized in the same specialty, obstetrics/gynecology, as Dr. Roberson. During the year preceding 29 March 1997, Dr. Linton spent all of his professional time teaching at an accredited health professional school and the majority of it teaching "from the vantage point of OB/GYN." This is sufficient evidence to meet the requirements of Rule 702. The trial court did not err in qualifying Dr. Linton as an expert and admitting his testimony into evidence. This assignment of error is overruled.

### IV. Testimony of Drs. Horner and Otto

**[2]** Defendant contends that the trial court erred in admitting the expert testimony of Drs. Horner and Otto "on the ground that these physicians were not familiar with the community standard" as required by N.C. Gen. Stat. § 90-21.12. We disagree.

N.C. Gen. Stat. § 90-21.12 provides:

In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

### A. Dr. Horner

Dr. Horner testified that he practiced in the Charlotte, North Carolina area and was licensed to practice throughout the state. At trial, Dr. Horner testified that he was familiar with the standard of care with respect to obstetrics, gynecology and sonography in communities similar to Wilmington, North Carolina. He based this opinion on Internet research about the size of the hospital, the training program, and the AHEC (Area Health Education Center) program. He testified that the hospital involved was "a training hospital, very sophisticated." This testimony is sufficient to satisfy the require-

ments for N.C. Gen. Stat. § 90-21.12. The trial court did not err in admitting the expert testimony of Dr. Horner.

### B.  Dr. Otto

Dr. Otto, a board certified specialist in obstetrics/gynecology, is licensed to practice medicine in California and Colorado. He testified as follows:

> Q.  Have you seen [in Internet records on New Hanover] that this hospital, New Hanover, is a teaching school? They teach residents and that sort of thing, obstetrics, gynecology?
>
> A.  Yes.
>
> Q.  After looking at this, do you feel comfortable being able to compare, say, a community in California that's similar to a place like this in making comments on standard of care based on those type of comparisons?
>
> A.  I see no reason to think that their standard of care would be any different than where I practice now or where I have practiced in the past.

Dr. Otto sufficiently testified to familiarity with the standard of care in communities similar to Wilmington to satisfy N.C. Gen. Stat. § 90-21.12. The trial court did not err in admitting Dr. Otto's testimony of the standard of care. This assignment of error is overruled.

### V.  Testimony of Drs. Warren and Tonn

**[3]** Defendants contend that because Drs. Warren and Tonn were not listed on pre-trial discovery in the action against them, although they were listed in the action against Dr. Ragozzino, it was improper for the trial court to admit their testimony into evidence against them. We disagree.

In medical malpractice cases, North Carolina Rules of Civil Procedure require a discovery conference to set deadlines for designating experts and conducting discovery. N.C. Gen. Stat. § 1A-1, Rule 26(f1). Rule 26(f1) provides in part:

> If a party fails to identify an expert witness as ordered, the court shall, upon motion by the moving party, impose an appropriate sanction, which may include dismissal of the action, entry of default against the defendant, or exclusion of the testimony of the expert witness at trial.

"The goal of the discovery rules is to facilitate the disclosure, prior to trial, of any unprivileged information that is relevant and material to the lawsuit so as to permit the narrowing and sharpening of basic issues and facts to go to trial." *Willoughby v. Wilkins*, 65 N.C. App. 626, 642, 310 S.E.2d 90, 100 (1983), *disc. rev. denied*, 310 N.C. 631, 315 S.E.2d 697 (1984). Defendants rely on the following language of *Willoughby*:

> Federal cases have held that testimony must be excluded when the party from whom discovery was requested failed to exercise reasonable diligence to give the party requesting discovery adequate information concerning witnesses or theories of the case and provided only last-minute responses to requests for discovery. To allow such practices would be unfair and constitutes prejudice to the party seeking discovery inasmuch as that party would be deprived of the right and ability to adequately prepare for cross examination or the right to obtain and present rebuttal evidence

*Id.* at 641, 310 S.E.2d at 99 (citations omitted).

Prior to the voluntary dismissal of the complaint against Dr. Ragozzino, a discovery conference was held. Neither Dr. Tonn nor Dr. Warren were identified as potential expert witnesses at that conference. However, Dr. Tonn was a treating physician of plaintiff. In the Ragozzino action, there was a separate conference, at which Dr. Warren was designated as a potential expert witness. The record reflects that Dr. Tonn was later identified as an expert. After the designation of expert witnesses was completed, the trial court consolidated the two actions pursuant to Rule 20 and 21 of the North Carolina Rules of Civil Procedure. Dr. Tonn was deposed in both actions in separate depositions. Defendants contend that they only deposed him as a treating physician and not an expert. However, the deposition testimony included defendants questioning him as an expert witness. Dr. Warren was only deposed once, after the consolidation order was entered. Although Dr. Roberson and his attorney were not present at the deposition of Dr. Warren, they were duly notified and did not appear or object. At trial, Drs. Tonn and Warren were called as expert witnesses against all defendants.

At bar, the purpose of the discovery rules was achieved and defendants were not prejudiced by any actions of plaintiffs in failing to timely notify defendants of experts in this action. All parties had the opportunity to depose both Drs. Tonn and Warren as experts

before trial. Defendants cannot claim "surprise" by the expert testimony of either physician and have failed to show that the trial court abused its discretion in allowing into evidence the expert testimony of Drs. Tonn and Warren. This assignment of error is overruled.

## VI.  Denial of Motion for JUDGMENT NOTWITHSTANDING THE VERDICT

**[4]** Defendants contend that testimony of Drs. Tonn and Warren should have been excluded because they were "speculative" and insufficient to establish damages. Defendants also contend the trial court erred by denying their motions for direct verdict, JNOV, or in the alternative a new trial "on the grounds that the evidence is legally and factually insufficient to support the finding of defendants' negligence." We address these assignments of error together.

"A motion for judgment notwithstanding the verdict 'is cautiously and sparingly granted.' The bar is high for the moving party; the trial court should deny the motion if there is more than a scintilla of evidence to support the plaintiff's prima facie case." *Whitaker v. Akers*, 137 N.C. App. 274, 276-77, 527 S.E.2d 721, 723-24, *disc. rev. denied*, 352 N.C. 157, 544 S.E.2d 245 (2000) (citations omitted).

"In order to withstand the defendants' motion for a directed verdict on their negligence claim, plaintiffs were required to offer evidence establishing the following: (1) the standard of care; (2) breach of the standard of care; (3) proximate causation; and (4) damages." *Bridges v. Shelby Women's Clinic, P.A.*, 72 N.C. App. 15, 19, 323 S.E.2d 372, 375 (1984), *disc. rev. denied*, 313 N.C. 596, 330 S.E.2d 605 (1985) (citing *Lowery v. Newton*, 52 N.C. App. 234, 237, 278 S.E.2d 566, 570 (1981)).

Here, multiple doctors testified to their knowledge of the standard of care in the Wilmington community or in similar communities and their opinion of whether defendants breached that standard of care. Dr. Linton testified, "My opinion is with a reasonable degree of medical certainty that [Dr. Roberson's] treatment of Sarah Coffman did not meet the standards of his community." This is sufficient evidence for the jury to decide whether defendants breached the standard of care and of proximate cause.

As to damages, both Drs. Tonn and Warren testified to plaintiffs' severe emotional distress resulting from the negligence of defendants. Defendants contend that the testimony of Tonn and Warren is too speculative to support damages. However, proof of severe emo-

tional distress does not require medical expert testimony. *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 300, 395 S.E.2d 85, 95 (1990) ("Common sense and precedent tell us that a defendant's negligent act toward one person may proximately and foreseeably cause emotional distress to another person and justify his recovering damages, depending upon their relationship and other factors present in the particular case.") In addition to the testimony of Drs. Tonn and Warren regarding proximate cause and damages, Sarah, her friends, her family, and her pastor testified to the severe emotional distress she suffered and continues to suffer as a result of defendants' negligence.

Plaintiffs presented sufficient evidence for a jury to determine issue of the negligence of defendants. The trial court did not err in denying defendants motion for a directed verdict, JNOV, or a new trial. This assignment of error is overruled.

## VII. Motion for Costs

[5] Defendants contend that the trial court erred in granting plaintiffs' motion for costs "because these costs are not permitted under North Carolina Law." Defendants argue that costs for expert witnesses are not proper because there is no evidence in the record that plaintiffs' experts testified at trial pursuant to a subpoena as required by law.

Witness' fees are not recognized as costs unless an expert witness is subpoenaed. *Wade v. Wade*, 72 N.C. App. 372, 384, 325 S.E.2d 260, 271, *disc. rev. denied*, 313 N.C. 612, 330 S.E.2d 616 (1985). Where the record fails to show that the expert witnesses were testifying pursuant to a subpoena, costs should not be awarded. *Whiteside Estates, Inc., v. Highlands Cove, L.L.C.*, 146 N.C. App. 449, 470, 553 S.E.2d 431, 445 (2001). At bar, the record clearly reflects, through the sworn affidavit of plaintiffs' attorney, that all of the expert witnesses testified at trial pursuant to a subpoena. In addition, plaintiffs' attorney attached to his affidavit the signed return receipts as proof of service. The trial court did not err by taxing the cost of expert witnesses to defendants.

Defendants also argue that plaintiffs may not recover expert witness fees that are unrelated to the testimony before the court. We disagree.

"N.C. Gen. Stat. § 6-20 provides that in those civil actions not enumerated in § 6-18, 'costs may be allowed or not, in the discretion of

**COFFMAN v. ROBERSON**

[153 N.C. App. 618 (2002)]

the court, unless otherwise provided by law.' " *Lewis v. Setty*, 140 N.C. App. 536, 538, 537 S.E.2d 505, 506 (2000) (quoting N.C. Gen. Stat. § 6-20). Since medical malpractice actions are not enumerated within N.C. Gen. Stat. § 6-18, this case falls within N.C. Gen. Stat. § 6-20. A trial court's determination to award costs is not reviewable on appeal absent an abuse of discretion. *Id.* at 538, 537 S.E.2d at 507. "We note that § 7A-305, which specifies in subsection (d) the costs recoverable in civil actions, also provides in subsection (e) that '[n]othing in this section shall affect the liability of the respective parties for costs as provided by law.' Consequently, we find that the authority of trial courts to tax deposition expenses as costs, pursuant to § 6-20, remains undisturbed." *Alsup v. Pitman*, 98 N.C. App. 389, 391, 390 S.E.2d 750, 751 (1990). "While case law has found that deposition costs are allowable under section 6-20, it has in no way precluded the trial court from taxing other costs that may be 'reasonable and necessary.' " *Minton v. Lowe's Food Stores*, 121 N.C. App. 675, 680, 468 S.E.2d 513, 516, *disc. rev. denied*, 344 N.C. 438, 476 S.E.2d 119 (1996).

Here, the trial court taxed costs to defendants for court costs, N.C. Gen. Stat. § 7A-305(a), 305(d)(6), mediation costs, *Sara Lee Corp. v. Carter*, 129 N.C. App. 464, 500 S.E.2d 732 (1998), *rev'd on other grounds*, 351 N.C. 27, 519 S.E.2d 308 (1999), deposition costs, *Sealy v. Grine*, 115 N.C. App. 343, 444 S.E.2d 632 (1994), expert fees and expenses, *supra.*, witnesses' mileage expenses, N.C. Gen. Stat. § 7A-314(b), service of subpoenas, N.C. Gen. Stat. § 705(b)(4), trial exhibits, and travel expenses for hearings and trial, *Smith v. Underwood*, 127 N.C. App. 1, 13, 487 S.E.2d 807, 815, *disc. rev. denied*, 347 N.C. 398, 494 S.E.2d 410 (1997) ("Since the enumerated costs sought by plaintiffs are not expressly provided for by law, it was within the discretion of the trial court whether to award them. Plaintiffs have not shown an abuse of discretion."). These costs were properly allowed under the authority of N.C. Gen. Stat. § 6-20 and N.C. Gen. Stat. § 7A-305. Defendants have failed to show the trial court abused its discretion in allowing these costs to be taxed to defendants. This assignment of error is overruled.

## VIII. Conclusion

We hold that the trial court did not err in the admission of the expert testimony of Drs. Linton, Otto, Horner, Warren and Tonn. We also affirm the trial court's orders denying defendants' motion for judgment notwithstanding the verdict and granting plaintiffs' motion for costs.

No error as to trial. Affirmed as to defendant's motion for JNOV and plaintiff's motion for costs.

Chief Judge EAGLES and Judge THOMAS concur.