JANET E. MOORE, Plaintiff v. DANIEL H. PROPER, SHAUN O'HEARN, DR. SHAUN
O'HEARN, DDS, P.A., and AFFORDABLE CARE, INC., Defendants

No. COA10-1475

(Filed 6 September 2011)

**1. Medical Malpractice—Rule 9(j)—qualification as expert
witness—erroneous conclusion—summary judgment improper**

The trial court erred in a medical malpractice case by grant-
ing summary judgment in favor of defendants for plaintiff's failure
to comply with Rule 9(j). The trial court erroneously concluded
that no reasonable person would have expected plaintiff's expert
witness to qualify as an expert witness under Rule 702.

**2. Medical Malpractice—expert witness—no extraordinary
circumstances—insufficient grounds for dismissal—sum-
mary judgment improper**

The trial court erred in a medical malpractice case by grant-
ing summary judgment in favor of defendants. The trial court's
ruling that no extraordinary circumstances existed to qualify
plaintiff's expert witness to serve as an expert witness under Rule
702(e) was akin to a ruling on a motion in *limine* and was insuf-
ficient grounds for dismissal at that point in the litigation.

Appeal by Plaintiff from Order entered 20 August 2010 by Judge
James L. Baker, in Madison County Superior Court. Heard in the
Court of Appeals 13 April 2011.

*Long, Parker, Warren, Anderson & Payne, P.A., by Steven R.
Warren, for Plaintiff-appellant.*

*Cranfill Sumner & Hartzog LLP, by Jaye E. Bingham, for
Defendant-appellee Daniel H. Proper.*

*Shumaker, Loop & Kendrick, LLP, by Scott A. Hefner and Scott
M. Stevenson, for Defendants-appellees Shaun O'Hearn, Dr.
Shaun O'Hearn, DDS, P.A., and Affordable Care, Inc.*

HUNTER, JR., Robert N., Judge.

MOORE v. PROPER

[215 N.C. App. 202 (2011)]

## I. Factual and Procedural History

Janet E. Moore ("Plaintiff") sought treatment for a toothache on 16 January 2006 and was treated by Dr. Proper, a dentist in Dr. Shaun O'Hearn's office. On 12 January 2009, Plaintiff's counsel filed a motion and obtained an order from the court pursuant to Rule 9(j) extending the statute of limitations in a medical malpractice action to 16 May 2009 to seek an appropriate expert witness. Plaintiff's 5 March 2009 Complaint alleges Dr. Proper fractured her jaw while extracting a tooth, and thereafter discharged her without notifying her of the fracture and providing the proper care. Plaintiff alleges Dr. O'Hearn was negligent in failing to provide Plaintiff care after the fracture and that O'Hearn's office and Affordable Care are liable under the theories of *respondeat superior*, agency, or vicarious liability.

As required by Rule 9(j) of the North Carolina Rules of Civil Procedure, the Complaint contained the following language: "[t]he medical care in this case has been reviewed by Dr. Joseph C. Dunn, who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the medical care provided by the Defendants did not comply with the applicable standard of care." Defendants, in answering this allegation, denied the allegation for lack of information and belief.

Pursuant to an order of the trial court dated 10 August 2009 (which does not appear in the record), Plaintiff provided an "Expert Witness Designation" which identified Dr. Joseph C. Dunn as Plaintiff's expert witness. The designation describes Dr. Dunn as a 1966 graduate of the University of North Carolina at Chapel Hill and a 1970 graduate of the University of Louisville School of Dentistry. Dr. Dunn also practiced in the United States Dental Corp. and practiced in Asheville for almost 25 years. Dr. Dunn explained the alleged deviation from the applicable standard of care as follows:

> The Plaintiff was not treated in accordance with the expected standard of care for treatment by a General Dentist in North Carolina in that she was not advised of the risks of a fractured jaw occurring from any treatment which was to be afforded by Dr. Proper, Dr. Proper did not take any steps to prevent the fracture of the jaw if extraction became difficult and he failed to provide for her proper follow up care after she experienced pain as a result of the extraction.

Defendants served 10 interrogatories pursuant to Rule 9(j). Dr. Dunn answered the interrogatories, in part, as follows:

2. State whether you practice dentistry and, if so, what percentage of your professional time was spent in the clinical practice of dentistry, during January, 2005 to January, 2006, and, if not, in what specialty did you practice during that time?

ANSWER: I retired in July 1997 after 35 years of general dentistry practice. However, I have maintained a valid license to practice general dentistry in good standing since my retirement in July of 1997.

3. State whether you taught students in an accredited health professional school or an accredited residence or clinical research program in the area of dentistry and, if so, what percentage of your professional time was spent in teaching students dentistry during January, 2005 to January, 2006.

ANSWER: N/A

After receipt of these Answers, Defendants did not immediately seek to dismiss Plaintiff's Complaint. Discovery continued.

On 29 April 2010, Dr. Dunn was deposed by Defendants. Among the answers given in his deposition were the following responses:

Q. I want to talk a little bit about the time period from January of 2005 until January of 2006. Were you actually practicing dentistry then?

A. I was doing the same fill-in work.

Q. Do you recall how many days you filled in that year?

A. It was a lot more than it is now, but, I—no, I couldn't really give you a number. I'll throw out one, 30 days maybe. I really don't know . . . .

Q. I know you don't remember a whole lot about that time, but can you—we're going through the same exercise of breaking it down percentage wise of your practice from January of 2005 until January of 2006. What percentage of your time was in the active clinical practice of dentistry?

A. Well, you know, that is really an unfair question. Whenever you are looking at a patient, you are practicing clinical dentistry.

Q. Right.

MOORE v. PROPER

[215 N.C. App. 202 (2011)]

A. Whether you are diagnosing it or looking at their cleaning, or you're filling a tooth, taking out a tooth. So I would say when I am there it is 100 percent. . . .

Q. All right. Over the entire year, of all the time you spent in a year of your professional time—because I understand at that point in time you were also running for mayor?

A. Uh-huh [yes].

Q. You were retired spending time with your grandchildren?

A. Uh-huh [yes].

Q. What percentage of your time are you actually seeing patients?

A. Okay. Gosh, that's—

[Plaintiff's Lawyer]: Is that a 24 hour day time? Is that an eight hour day time?

Q. Let's say an eight hour work day. Of all the eight hour work days in any given year—

A. Three hundred sixty-five days a year.

Q. You are not working on the weekends, are you?

A. Okay.

Q. You're working—dentist[s] work four days a week?

A. Yeah, most of them.

Q. All right. Of those four days a week, we will assume that there are eight professional hours in a day. What percentage over the entire year are you working in the active clinical practice of dentistry?

A. I would say it's got to be less than five percent, I guess.

Q. Less than five percent?

A. Uh-huh (yes). That is just a thrown out number.

Q. But it's not 95 percent?

A. No.

Q. You wouldn't say that? It's not 50 percent?

A. No, it's just as needed you know. . . .

Q. So just so I am clear, you believe that your active clinical practice of dentistry was roughly less than five percent of your professional time?

A. Yes.

Q. Tell me a little bit about running for mayor, how much time did that take up?

A. It took up a lot.

Q. I'm sure.

A. You know, I'm on city council too, that was a lot of work.

Q. So how many hours a week would that be?

A. That was—I put in at least 20 to 25 hours a week.

Based upon the deposition responses, Defendants made a Motion for Summary Judgment, contending Dr. Dunn's expert witness testimony could not support a malpractice claim under Rule 9(j) of the North Carolina Rules of Civil Procedure and Rule 702 of the Rules of Evidence. Plaintiff then filed a motion under Rule 702(e), requesting that even if Dr. Dunn does not meet the Rule 702 requirements, he be recognized as an expert. Plaintiff also filed an affidavit by Dr. Dunn clarifying that in his deposition testimony, he stated that he spent one hundred percent of his professional time in the clinical practice of dentistry and that any other activities were personal, not professional.

Following the hearing on these motions, the trial court made two rulings. In the first ruling, the trial court granted summary judgment in favor of Defendants and dismissed Plaintiff's Complaint, stating Plaintiff did not comply with Rule 9(j), as no reasonable person would have expected Dr. Dunn to qualify as an expert witness under Rule 702. In the second ruling, the trial court ruled that no extraordinary circumstances existed to qualify Dr. Dunn to serve as an expert witness under Rule 702(e). We note that Defendants did not move to strike Dr. Dunn as an expert witness or to disqualify him pursuant to a motion *in limine*.

## II. Jurisdiction

This Court has jurisdiction of this appeal pursuant to N.C. Gen. Stat. § 7A-27(b) (2009).

## III. Analysis

**[1]** Rule 9(j) of the N.C. Rules of Civil Procedure and Rule 702 of the Rules of Evidence provide the statutory framework for resolving this dispute. It is undisputed in this controversy that Dr. Dunn was a licensed dental professional who had extensive experience treating · patients, that he did not provide instruction for students at a professional school or clinic, that he was prepared to offer testimony that Dr. Proper did not provide medical care which complied with the applicable standard of care, and that he practiced in the same specialty as Dr. Proper.

The portions of Rule 9(j) relevant to this controversy read as follows:

> (j) Medical malpractice.—Any complaint alleging medical malpractice by a health care provider as defined in G.S. 90-21.11 in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:

> (1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;

> (2) The pleading specifically asserts that the medical care has been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or

> (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. Gen. Stat. § 1A-1, Rule 9(j).

Rule 702 provides, in pertinent part:

> (b) In a medical malpractice action as defined in G.S. 90 21.11, a person shall not give expert testimony on the appropriate standard of health care as defined in G.S. 90 21.12 unless the person is a licensed health care provider in this State or another state and meets the following criteria:

> . . . .

(2) During the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness must have devoted a majority of his or her professional time to either or both of the following:

a.  The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, the active clinical practice of the same specialty or a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients; or

b.  The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

N.C.R. Evid. 702(b).

As a textual matter, Rule 9(j) is straightforward. The statute requires the trial court to answer a series of three questions, which if answered in sequential order will inevitably lead the trial court to the proper resolution of the issues raised by Rule 9(j). The statute requires the complaint to be dismissed *unless* one of the questions is affirmatively answered.

All three questions involve matters of pleading and therefore require an examination of Plaintiff's Complaint akin to a Rule 12(b)(6) motion to dismiss. First, does the Complaint specifically assert "that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care[?]" N.C. Gen. Stat. § 1A-1, Rule 9(j)(1). Second, does the Complaint specifically assert that the medical care has been reviewed by a person that the Plaintiff will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the Complaint? N.C. Gen. Stat. § 1A-1, Rule 9(j)(2).

MOORE v. PROPER

[215 N.C. App. 202 (2011)]

Our reading of the Complaint reveals Plaintiff pled a paragraph minimally sufficient to meet the requirements of Rule 9(j)(1) and (2). No party herein has argued *res ipsa loquitur*, not is it pled. We do not address the trial court's failure to address this issue, as it is not raised on appeal.

The question is whether Plaintiff could have "reasonably expected" Dr. Dunn to have qualified as an expert witness under Rule 702 at the time the Complaint was filed and whether a majority of Dr. Dunn's professional time was spent "actively engaged in clinical practice," as required by statute.

Because the parties moved for summary judgment, we review the trial court's first ruling under a *de novo* standard. *Barringer v. Wake Forest Univ. Baptist Med. Ctr.*, 197 N.C. App. 238, 247, 677 S.E.2d 465, 472 (2009) ("We review a trial court's ruling on summary judgment *de novo*."). "Whether the pleader could reasonably expect the witness to qualify as an expert under Rule 702 presents a question of law and is therefore reviewable *de novo* by this Court." *Trapp v. Maccioli*, 129 N.C. App. 237, 241 n.2, 497 S.E.2d 708, 711 n.2 (1998).

This Court inquires as to whether Plaintiff reasonably expected Dr. Dunn to qualify as an expert witness pursuant to Rule 702, not whether he will ultimately qualify. *Smith v. Serro*, 185 N.C. App. 524, 527, 648 S.E.2d 566, 568 (2007) (citing N.C.R. Civ. P. 9(j)(1) (2005); *Trapp*, 129 N.C. App. at 241, 497 S.E.2d at 711). "In other words, were the facts and circumstances known or those which should have been known to the pleader such as to cause a reasonable person to believe that the witness would qualify as an expert under Rule 702." *Trapp*, 129 N.C. App. at 241, 497 S.E.2d at 711 (citing *Black's Law Dictionary* 1265 (6th ed. 1990) (defining "reasonable belief")).

There is a difference between whether a plaintiff could "reasonably expect" an expert to qualify as such under Rule 9(j)(1) and whether the expert does in fact qualify as an expert. Whether the proposed expert is reasonably expected to qualify is resolved at the time the complaint is filed. Whether the proposed expert does in fact qualify as such is resolved after discovery is completed. We conclude that the trial court misapplied Rule 9(j)(1) and decided that the tendered expert could not "reasonably [be] expected to qualify" under Rule 9(j)(1) because the witness would not in fact meet the requirements for expert qualification. Based on our *de novo* review of whether it was reasonable for Plaintiff to expect Dr. Dunn to qualify as an expert, we conclude the trial court erred.

At the hearing on Defendants' Motion, and in response to the question of the percentage of his time from January 2005 until January 2006 spent in the active clinical practice of dentistry, Dr. Dunn answered that "when [he is] there it is 100 percent." Dr. Dunn then agreed that most dentists work four-day weeks and counsel asked, assuming eight hours of professional time per day, "What percentage over the entire year are you working in the active clinical practice of dentistry?" Dr. Dunn answered five percent in response to this question. It is true that he then answered yes to the question of whether it was five percent of his "professional time," but this is after he was told that the average dentist works four-day weeks, and each day includes eight hours of professional time. His response is taken out of context; when placed in the context of the series of questions being propounded to the expert, it is clear that the connotations concerned the professional time of full-time clinicians, not his professional time individually.

In his Affidavit filed after Defendants' Motion for Summary Judgment, Dr. Dunn claimed "during the time [he] was engaged in the active practice of dentistry, [he] spent one hundred percent of [his] professional time actively engaged in the clinical practice." He stated that he has practiced as a dentist in the area for over forty years and still engages in the active practice of dentistry, though not full-time. Dr. Dunn emphasized that his serving on the city council was a personal activity, and that none of his personal activities were part of his "profession." He stated that when he gave the five percent figure, he was referring to all of his time, "covering all the activities [he] was engaged in as a human being," but that when he was engaged in his profession, one hundred percent of his time was in the active clinical practice of dentistry.

Plaintiff argues that because Dr. Dunn was engaged in active clinical practice one hundred percent of his professional time, he met the standard in Rule 702, and thus their assertion under Rule 9(j) was proper. At the hearing, the trial court indicated that it did not believe the legislature intended the result advocated by Plaintiff. The trial court concluded "no reasonable person would have expected Dr. Joseph Dunn to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence."

Parties cite two cases in support of their positions: *Coffman v. Roberson*, 153 N.C. App. 618, 571 S.E.2d 255 (2002) and *Cornett v. Watauga Surgical Grp.*, 194 N.C. App. 490, 669 S.E.2d 805 (2008).

There is a tension between *Cornett* and *Coffman* as to what amount of time an expert witness works "professionally."

In *Coffman,* the expert was retired, but worked "professionally" the requisite period of time and this Court found no error in his qualification as an expert. *Coffman,* 153 N.C. App. at 624, 571 S.E.2d at 258-59 (expert witness stated instruction in his field "didn't take up a great deal of time," but that it was "all [he] did professionally during that period of time"). In *Cornett,* the expert was employed full time, according to the opinion, and worked a 60 hour workweek, occasionally performing minor surgery, instructing residents, attending rounds, and performing administrative duties at Tulane Medical School. *Cornett,* 194 N.C. App. at 494-95, 669 S.E.2d at 808. The administrative functions at Tulane Medical School composed a majority of his "professional time," and the physician was found to not meet the requirements of Rule 702(b). *Id.* at 495, 669 S.E.2d at 808.

The language of the statute does not require a "standard" workweek or give the courts any measure for the length of time a professional must work in order to compute the majority of an expert's "professional time." The statutory language relies on a case by case analysis of the term. Thus, a professional workweek is a factual question which the trial court must determine in making its decision.

In *Cornett,* the trial court found the "professional work week" to be 60 hours for the physician in question. 194 N.C. App. at 494-95, 669 S.E.2d at 808. After this fact was found, our Court relied on this finding as a predicate to apply Rule 9(j) and Rule 702(b). Unfortunately, the trial court failed to make any findings of fact, and there is nothing for us to review regarding the number of hours of which Dr. Dunn's "professional work week" was composed. On remand, the trial court must make sufficient findings of fact regarding the elements of Rule 702(b) qualifications on which it bases its decision as to whether his testimony would be available at trial if he is tendered.

We note the standard for dismissal under Rule 9(j) is different from the standard for admitting expert testimony at the time of trial. We express no opinion whether Dr. Dunn can meet the heightened standard should the matter go to trial, however, the trial court appears to have applied the wrong legal test in dismissing the complaint. The test is not whether the proposed expert can be qualified at trial or what the trial court believes the legislature "intended" when it passed the statute.

In order to grant summary judgment, a trial court's decision must be based on "undisputed facts." Whether Dr. Dunn met the "professional time" standard of Rule 702 appears to us to be a highly disputed fact, and is a fact which must be reviewed in "the light most favorable to the nonmoving party." *Diggs v. Novant Health, Inc.*, 177 N.C. App. 290, 294, 628 S.E.2d 851, 855 (2006). From the testimony provided and our interpretations of the Rule, we cannot agree with the trial court that "no reasonable person would have expected Dr. Joseph Dunn to qualify as an expert witness."

**[2]** As to the second ruling regarding the likelihood of Dr. Dunn to serve as an expert in this case due to extraordinary circumstances, we conclude this portion of the order is akin to a motion *in limine* and seeks a pretrial determination of the admissibility of evidence to be introduced at trial. Because any such determination would be subject to a final ruling by the trial judge, it would be insufficient grounds for dismissal at this point in the litigation.

## IV. Conclusion

Based on the foregoing reasons, we reverse.

Reversed and remanded.

Judge STEELMAN concurs.

Judge STEPHENS dissents.

STEPHENS, Judge, dissenting.

I respectfully dissent from the majority opinion to address the majority's misinterpretation and misapplication of North Carolina Civil Procedure Rule 9(j).

Rule 9(j), which sets out the heightened pleading requirements for a medical malpractice complaint, provides that "[a]ny complaint alleging medical malpractice by a health care provider" "*shall be dismissed*" unless the complaint satisfies one of the three following conditions:

(1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;

(2) The pleading specifically asserts that the medical care has been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, *and* the motion is filed with the complaint; or

(3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. Gen. Stat. § 1A-1, Rule 9(j) (2009) (emphasis added).

In this case, it is clear from Moore's complaint that she sought to satisfy Rule 9(j) by fulfilling the *Rule 9(j)(1) condition only*: (1) Moore's complaint "specifically asserts" that the medical care was reviewed by Dr. Dunn, "who is reasonably expected to qualify as an expert witness under Rule 702" and "who is willing to testify that the medical care provided by [] Defendants did not comply with the applicable standard of care"; (2) Moore's complaint contains no "specific assertion" that matches the language of Rule 9(j)(2); and (3) as noted by the majority, *res ipsa loquitur* "was not raised by the parties below and is not argued on appeal." Nevertheless, the majority concludes that "the [c]omplaint reveals [Moore] pled a paragraph minimally sufficient to meet the requirements of" Rule 9(j)(2). This conclusion is incorrect.

Initially, I again note that nowhere in Moore's complaint does she "specifically assert" that she will seek to have the person who reviewed the medical care "qualified as an expert witness by motion under Rule 702(e)" as required by Rule 9(j)(2). Further, Rule 9(j)(2) requires a plaintiff to file a Rule 702(e) motion *along with* the complaint. In this case, Moore filed a Rule 702(e) motion, but that motion was filed more than 15 months after the complaint was filed. Unequivocally, Moore failed to satisfy the mandate of Rule 9(j)(2), leading to the inescapable determination that the majority's conclusion on that issue is incorrect.

Because Moore has failed to satisfy the pleading requirements of Rule 9(j)(2), and because Moore did not satisfy Rule 9(j)(3), Moore's complaint should have been dismissed—and the trial court's judgment should be affirmed—unless the complaint satisfied the pleading requirements of Rule 9(j)(1). I conclude that it did not.

MOORE v. PROPER

[215 N.C. App. 202 (2011)]

I acknowledge that Moore's complaint, on its face, appears to satisfy the pleading requirements of Rule 9(j)(1): It contains a specific assertion that the medical care had been reviewed by a person who (1) is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence, and (2) is willing to testify that the medical care did not comply with the applicable standard of care. However, this Court has held that "even when a complaint facially complies with Rule 9(j) by including a statement pursuant to Rule 9(j), if discovery subsequently establishes that the statement is not supported by the facts, then dismissal is [] appropriate." *Barringer v. Wake Forest Univ. Baptist Med. Ctr.*, 197 N.C. App. 238, 255, 677 S.E.2d 465, 477 (2009) (quoting *Ford v. McCain*, 192 N.C. App. 667, 672, 666 S.E.2d 153, 157 (2008)).

> In considering whether a plaintiff's Rule 9(j) statement is supported by the facts, a court must consider the facts relevant to Rule 9(j) and apply the law to them. In such a case, this Court does not inquire as to whether there was any question of material fact, nor do we view the evidence in the light most favorable to the plaintiff. Rather, our review of Rule 9(j) compliance is *de novo*, because such compliance clearly presents a question of law.

*Id.* at 255-56, 677 S.E.2d at 477 (internal quotation marks, citations, and ellipsis omitted).

The dispositive question in this appeal is whether Moore's Rule 9(j)(1) statement that her expert Dr. Dunn "is reasonably expected to qualify as an expert witness under Rule 702" is supported by the facts. The majority concludes that Moore's expectation that Dr. Dunn would qualify as an expert under Rule 702 was reasonable. I disagree.

Rule 702 of the North Carolina Rules of Evidence provides that a proposed expert in a medical malpractice action "shall not give testimony on the appropriate standard of health care" unless the proposed expert is a licensed health care provider and meets the following criteria:

> During the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness must have devoted a majority of his or her professional time to either or both of the following:
>
> a. The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered . . . or

b. The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered . . . .

N.C. Gen. Stat. § 8C-1, Rule 702(b) (2009).[1]

In this case, because Dr. Dunn is a licensed dentist, because Dr. Dunn testified that he had spent no time instructing students during the year immediately preceding the date of Moore's alleged injury, and because Dr. Dunn is admittedly in the same health profession as Dr. O'Hearn and Dr. Proper, the more specific issue is whether Dr. Dunn devoted a majority of his professional time to the "active clinical practice" of general dentistry during the year immediately preceding the date of Moore's alleged injury. I conclude that, based on his description of his professional time, Dr. Dunn did not meet this Rule 702 requirement.

In his deposition, Dr. Dunn testified that, assuming a year of 32-hour workweeks (*i.e.*, four eight-hour days), he spent less than five percent of that time, or an average of less than 1.6 hours per week, in the clinical practice of dentistry, filling in for other dentist friends who needed the help. Dr. Dunn clarified that testimony in a subsequent affidavit, stating that the five-percent figure referred to "five percent of my entire time"—which time included running for and holding public office, spending time with his grandchildren, and golfing—and not five percent of his "professional time." Dr. Dunn then stated that 100 percent of the time that he was engaged in dentistry—his learned profession and, thus, his "professional time"—was spent in the clinical practice of dentistry. The upshot of Dr. Dunn's testimony is that he was engaged in the clinical practice of dentistry 100 percent of his "professional time," which was five percent of his "entire time" of a year's worth of 32-hour workweeks.

Assuming, without deciding, that Dr. Dunn's interpretation of "professional time" is correct—that "professional time" is limited to time spent on activities related to one's health profession and does not include other quasi-professional activities like holding public office—I nonetheless conclude that the majority of Dr. Dunn's pro-

---

1. Rule 702 contains additional rules for specialists that are not relevant to this appeal because Dr. Dunn testified in his deposition that he practices only general dentistry and has no specialization. *Cf. Roush v. Kennon*, 188 N.C. App. 570, 575-76, 656 S.E.2d 603, 607 (2008) (discussion of how a general dentist may be qualified as a specialist).

fessional time was not devoted to the "active clinical practice" of dentistry as required by Rule 702(b).

"When the language of a statute is clear and unambiguous, it must be given effect and its clear meaning may not be evaded by an administrative body or a court under the guise of construction." *Thigpen v. Ngo,* 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002). The clear and unambiguous language of Rule 702 requires that a proposed expert's clinical practice not only must constitute the majority of that expert's professional time, but also that that clinical practice must be "active." N.C. Gen. Stat. § 8C-1, Rule 702. It is this mandate of "active" clinical practice that Dr. Dunn fails to meet.

"Words not defined in [a] statute are given their plain meaning so long as it is reasonable to do so." *Formyduval v. Bunn,* 138 N.C. App. 381, 386, 530 S.E.2d 96, 100 (2000) (quoting *Polaroid Corp. v. Offerman,* 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998), *cert. denied,* 526 U.S. 1098, 143 L. Ed. 2d 671 (1999)) (internal quotation marks omitted). "Dictionaries may be used to determine the plain meaning of words." *Id.* at 387, 530 S.E.2d at 100-01 (citing *Hunter v. Kennedy,* 128 N.C. App. 84, 86, 493 S.E.2d 327, 328 (1997)).

Of the several dictionary definitions of "active," the most reasonable in this context is "disposed to action," as in "energetic, diligent." Webster's Third New International Dictionary, (Unabridged 2002). While other of the definitions—such as "characterized by action rather than contemplation or speculation" or "engaged in an action or activity," *id.*—present themselves as reasonable alternatives, these alternatives would render the statute's use of either the word "active" or "clinical" superfluous in that this Court has previously defined "clinical" in this context to mean nearly the same thing, *i.e.,* "based on or pertaining to actual experience in the observation and treatment of patients." *Formyduval,* 138 N.C. App. at 391, 530 S.E.2d at 103 (quoting 2 J.E. Schmidt, Attorney's Dictionary of Medicine C-310 (1999)). Because interpretation yielding superfluity is disfavored, *State v. Coffey,* 336 N.C. 412, 417, 444 S.E.2d 431, 434 (1994) (holding that "a statute should not be interpreted in a manner which would render any of its words superfluous"), it is more reasonable to interpret the requirement of "active" clinical practice as requiring "energetic and diligent" clinical practice, as opposed to requiring mere non-speculative, non-inactive clinical practice.

The effect of this interpretation of an *active* clinical practice necessarily is the creation of a baseline level of proposed experts'

"activeness," below which a proposed expert's clinical practice is not sufficiently active to satisfy the requirements of Rule 702(b). Were it otherwise, a proposed expert who devoted 0.01 hours per year to the clinical practice of his health profession—perhaps a general dentist who cleaned one tooth in a year and had no other professional activities—would be eligible to testify under Rule 702(b). The absurdity of this result is magnified by the fact that such an expert would be eligible to testify while a proposed expert who devoted slightly less than 50 percent of a full year's worth of professional time to clinical practice—or 999 hours in a 40-hour per week, 50-week year—and slightly more than 50 percent of that professional time to administrative functions would be ineligible. Certainly there must be some level at which a proposed expert's clinical practice cannot be considered active.

While that minimum level of activity may vary among cases and needs no precise determination in this case, in my view, a clinical practice of 1.6 hours per week is not sufficiently active to qualify a proposed expert under Rule 702(b). In support of this conclusion, I note that the intent of the legislature in amending Rule 702 to include the current 702(b) requirements, as indicated by the title of the act introducing those requirements, was to

Prevent Frivolous Medical Malpractice Actions by Requiring that Expert Witnesses in Medical Malpractice Cases Have Appropriate Qualifications to Testify on the Standard of Care at Issue and to Require Expert Witness Review as a Condition of Filing a Medical Malpractice Action.

Act of June 20, 1995, ch. 309, 1995 N.C. Sess. Laws 611. By requiring "appropriate qualifications" of experts as a means to prevent frivolous medical malpractice actions, the legislature indicated a clear desire to require the proposed experts who review cases to have adequate familiarity with the relevant standard of care. *Id.; see also Formyduval*, 138 N.C. App. at 390, 530 S.E.2d at 102 (noting that the purpose of Rule 702(b) is "to insure that malpractice actions are 'reviewed by qualified practitioners of a competence similar to' defendant of suit" (quoting April 19, 1995 *Minutes of the House Select Comm. On Tort Reform))*. One cannot seriously contend that a proposed expert who devotes 0.01 hours per year to the clinical practice of dentistry is qualified to testify to the appropriate standard of care in a health profession that Dr. Dunn describes as "always changing," and allowing the qualification of such a proposed expert would seriously undermine the legislature's attempt to prevent frivolous med-

ical malpractice claims. I conclude that a clinical practice of no more than 1.6 hours per week is likewise insufficient to qualify a proposed expert under Rule 702(b).

Nevertheless, the question in this case is not whether Dr. Dunn *should* qualify under Rule 702(b), but whether *Moore's expectation that Dr. Dunn would* qualify as an expert witness under Rule 702 was reasonable and supported by the facts. "In other words, were the facts and circumstances known or those which should have been known to [Moore] such as to cause a reasonable person to believe that [Dr. Dunn] would qualify as an expert under Rule 702." *See Trapp v. Maccioli*, 129 N.C. App. 237, 241, 497 S.E.2d 708, 711 (1998) (citing *Black's Law Dictionary* 1265 (6th ed. 1990) for the definition of reasonable belief).   ·

The facts and circumstances known or which should have been known to Moore are as follows: In her expert witness designation, Moore alleged that Dr. Dunn was "licensed to practice in North Carolina, having practiced in Asheville from 1973 until [his] retirement in 1997"; in response to interrogatories, Dr. Dunn stated that he "maintained a valid license to practice general dentistry in good standing since [his] retirement in July of 1997"; and in his deposition, Dr. Dunn testified that his clinical practice amounted to less than five percent of a 32-hour workweek, or an average of 1.6 hours per week.

In my view, these facts and circumstances show that Moore's expectation that Dr. Dunn would qualify as an expert witness was not reasonable. First, the fact that Dr. Dunn retired nine years prior to the alleged malpractice—and had been retired for almost 12 years by the time Moore filed her complaint—should have indicated to Moore that Dr. Dunn likely was not maintaining an active clinical practice. This fact would have led a reasonable person to inquire as to the extent of Dr. Dunn's clinical practice in the year prior to the alleged malpractice. Second, and more importantly, a reasonable person who conducted such an inquiry would not have concluded that a dentist who spends an average of 1.6 hours per week in the clinical practice of dentistry would qualify as an expert under a statute that requires a proposed expert to have devoted the majority of his professional time to the *active clinical practice* of dentistry.

As discussed *supra*, the Rule 702(b) requirement of *active* clinical practices requires the proposed expert to have an energetic and diligent practice. In my view, no reasonable person would conclude that 1.6 hours per week constitutes an active, energetic, and diligent

MOORE v. PROPER

[215 N.C. App. 202 (2011)]

health care practice.[2] Rather, a reasonable person would consider such practice to be sporadic, quiescent, and sedentary, *i.e.*, inactive. Accordingly, I agree with the trial court that Moore's expectation that Dr. Dunn would qualify was unreasonable, and I conclude that the trial court did not err in granting summary judgment for Defendants based on Moore's failure to satisfy the certification requirements of Rule 9(j).

Despite the failure of Moore's complaint to satisfy Rule 9(j), Moore argues that summary judgment for Defendants was nevertheless error because "the case could still proceed on the theories of [Defendant] having failed to exercise his best judgment and reasonable care," which theories, Moore urges, do not require a Rule 9(j) certification. Whether Moore is correct that those theories of recovery do not require certification is irrelevant because Moore failed to assert such theories in her complaint. As previously held by this Court, a plaintiff is bound by her pleadings, *Sturgill v. Ashe Mem'l Hosp., Inc.*, 186 N.C. App. 624, 628, 652 S.E.2d 302, 305 (2007) ("In determining whether or not Rule 9(j) certification is required, the North Carolina Supreme Court has held that 'pleadings have a binding effect as to the underlying theory of plaintiff's negligence claim.'" (quoting *Anderson v. Assimos*, 356 N.C. 415, 417, 572 S.E.2d 101, 102 (2002)), and in this case, Moore has only alleged that she is entitled to recover damages from (1) Dr. Proper's furnishing of tooth extraction services and failure to furnish post-extraction care, and (2) Dr. O'Hearn's failure to furnish post-extraction care. Such a claim for damages "arising out of the furnishing or failure to furnish professional services" in the performance of dental care constitutes a medical malpractice action. N.C. Gen. Stat. § 90-21.11 (2009). As Moore has only asserted this medical malpractice claim, she is required to meet the certification requirements of Rule 9(j). Moore's failure to do so warrants dismissal of her claim.

---

2. Moore points to *Coffman v. Roberson*, 153 N.C. App. 618, 571 S.E.2d 255 (2002), *disc. review denied*, 356 N.C. 668, 577 S.E.2d 111 (2003)—in which this Court held that a proposed expert who "did some volunteer teaching" that "didn't take up a great deal of time" was qualified to testify under Rule 702, *id.* at 623-24, 571 S.E.2d 258-59—to support her argument that all that is required is that the clinical practice constitute a majority of one's professional time and that the extent, or activeness, of the clinical practice is irrelevant. First, this interpretation ignores the "active" requirement of Rule 702(b). Second, *Coffman* is inapposite in that it addresses only Rule 702(b)(2)(b) and professional time devoted to "[t]he instruction of students in an accredited health professional school," and does not address Rule 702(b)(2)(a) and the active clinical practice of a health profession. Unlike 702(b)(2)(a), 702(b)(2)(b) contains no similar "active" requirement. N.C. Gen. Stat. § 8C-1, Rule 702(b)(2).

Based on the foregoing, I conclude that the trial court appropriately granted summary judgment for Defendants and properly dismissed Moore's claim.[3] The judgment of the trial court should be affirmed.

---

3. Moore makes a final argument that the trial court erred by denying her Rule 702(e) motion. This argument need not be addressed because the complaint was properly dismissed based on the pleadings.