MARIE T. FORMYDUVAL, Administratrix of the Estate of HARTWELL B. FORMYDUVAL, Plaintiff v. DAVID G. BUNN, M.D., Defendant

No. COA99-961

(Filed 20 June 2000)

**Medical Malpractice— expert witness—standard of care—general practitioner**

The trial court did not err in a medical malpractice action by ruling that plaintiff's expert witnesses were not qualified to testify as to the applicable standard of care, resulting in a proper directed verdict for defendant, where defendant was a general practitioner and all three of plaintiff's witnesses were specialists as that term is used in the statute. N.C.G.S. § 8C-1, Rule 702 requires that an expert witness against a general practitioner must be a general practitioner; doctors who are either board certified in a specialty, who hold themselves out to be specialists, or who limit their practice to a specific field of medicine are properly deemed specialists.

Appeal by plaintiff from orders entered 14 April 1999 by Judge Abraham Penn Jones in Columbus County Superior Court. Heard in the Court of Appeals 27 April 2000.

FORMYDUVAL v. BUNN

[138 N.C. App. 381 (2000)]

*Britt & Britt, P.L.L.C., by William S. Britt, for plaintiff-appellant.*

*Walker, Clark & Allen, L.L.P., by Robert D. Walker, Jr. and O. Drew Grice, Jr., for defendant-appellee.*

SMITH, Judge.

Plaintiff Marie T. FormyDuval, administratrix of the estate of Hartwell B. FormyDuval (decedent), appeals from the trial court's orders (1) prohibiting her expert witnesses from testifying as to the applicable standard of care and (2) dismissing her wrongful death claim against defendant. We affirm.

Defendant is a physician practicing as a general practitioner in Whiteville, North Carolina, whose medical training included four years of medical school and a one year internship. Decedent first became a patient of defendant in 1976. On 26 August 1993, decedent, complaining of red spots on his legs and ankles and blue spots on his forearms and legs, was seen by defendant in defendant's office. It appears from the record that defendant drew blood from decedent and sent the blood sample to a lab in Burlington for analysis.

Plaintiff alleges the analysis of the blood sample was returned to defendant's office Friday, 27 August 1993, but that defendant did not inform decedent or plaintiff of the results of the analysis until 31 August 1993. On that date, decedent returned for a scheduled follow-up visit with defendant, at which defendant diagnosed decedent with thrombocytopenia purpura. Defendant alleges he implored decedent to be hospitalized to treat his condition, but decedent refused hospitalization.

Plaintiff called defendant after decedent's appointment, and alleges she was not informed of defendant's recommendation that decedent be hospitalized. On 2 September 1993, decedent complained of a severe headache and blurry vision, and was taken to defendant's office by plaintiff. Defendant advised plaintiff to immediately take decedent to the emergency room. Decedent died at the hospital 3 September 1993.

Plaintiff originally filed suit against defendant in 1995, but took a voluntary dismissal of that action and subsequently refiled on 19 August 1997. *See* N.C.G.S. § 1A-1, Rule 41(a) (1999). Plaintiff's refiled action alleged, *inter alia*, defendant "failed to properly refer [decedent] to specialists," should have "taken a more aggressive approach

to [decedent's] treatment, including hospitalization," and upon receiving the blood test results, "should have called [d]ecedent . . . and insisted that he go to the hospital." Defendant answered 28 August 1997 denying his negligence and asserting decedent's contributory negligence in bar of plaintiff's claims.

Trial began 12 April 1999. After hearing opening statements from both parties, the trial court heard argument regarding whether the expert medical witnesses plaintiff wished to call at trial, Dr. Lloyd McCaskill (Dr. McCaskill), Dr. Douglass Hammer (Dr. Hammer), and Dr. Eugene Paschold (Dr. Paschold), were qualified to testify against defendant pursuant to N.C.G.S. § 8C-1, Rule 702(c) (1999) (Rule 702). The parties also conducted a *voir dire* examination of Dr. McCaskill. The trial court then ruled, pursuant to defendant's Motion to Exclude Testimony of Expert Witnesses, that plaintiff's experts were not qualified to testify as to the applicable standard of care. Plaintiff thereupon rested her case, and defendant's subsequent motion for directed verdict was granted by the trial court. The sole issue on appeal is whether plaintiff's witnesses were properly disqualified.

Rule 702 governs the admissibility of expert testimony. Prior to 1996, Rule 702 stated:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

Rule 702 was amended in 1995, with the amendments effective 1 January 1996 and applicable to all cases filed on or after that date. *See* 1995 N.C. Sess. Laws ch. 309, § 1. The parties concede that the amended version of the Rule applies to the instant action, which was refiled 19 August 1997. We assume without deciding that the parties are correct, and thus apply Rule 702, as amended, to the case *sub judice.*

The amended rule retains the language quoted above and adds several provisions relating specifically to expert witnesses testifying to the appropriate standard of care in medical malpractice actions. *See Andrews v. Carr*, 135 N.C. App. 463, 469, 521 S.E.2d 269, 273 (1999), *disc. review denied*, 351 N.C. 471, —— S.E.2d —— (2000). Rule 702(b)(1) governs expert testimony on the "appropriate standard of health care" offered against or on behalf of a "specialist," while Rule

702(c) governs such testimony offered against or on behalf of a "general practitioner:"

(b) In a medical malpractice action as defined in G.S. 90-21.11, a person shall not give expert testimony on the appropriate standard of health care as defined in G.S. 90-21.12 unless the person is a licensed health care provider in this State or another state and meets the following criteria:

(1) If the party against whom or on whose behalf the testimony is offered is a specialist, the expert witness must:

a. Specialize in the same specialty as the party against whom or on whose behalf the testimony is offered; or

b. Specialize in a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients.

(2) During the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness must have devoted a majority of his or her professional time to either or both of the following:

a. The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, the active clinical practice of the same specialty or a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients; or

b. The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

(c) Notwithstanding subsection (b) of this section, if the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the action, must have devoted a majority of his or her professional time to either or both of the following:

FORMYDUVAL v. BUNN

[138 N.C. App. 381 (2000)]

(1) Active clinical practice as a general practitioner; or

(2) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the general practice of medicine.

Both parties agree that (1) defendant in this case is a "general practitioner," such that Rule 702(c) governs the instant action; and, (2) none of plaintiff's proffered witnesses were engaged in instruction of students in the year preceding August 1993, such that section (c)(2) is inapplicable. Thus, to testify against defendant as to the applicable standard of care, plaintiff's experts must have, in the year preceding August 1993, (1) devoted a majority of their "professional time" (2) to "active clinical practice" (3) as a "general practitioner." Rule 702(c)(1). All three statutory requirements must be met in order to testify.

"[O]rdinarily, whether a witness qualifies as an expert is exclusively within the discretion of the trial judge." *State v. Underwood*, 134 N.C. App. 533, 541, 518 S.E.2d 231, 238 (1999), *cert. allowed*, 351 N.C. 368, —— S.E.2d —— (2000). However, where an appeal presents questions of statutory interpretation, full review is appropriate, and a trial court's conclusions of law are reviewable *de novo*. *Mark IV Beverage, Inc. v. Molson Breweries USA, Inc.*, 129 N.C. App. 476, 480, 500 S.E.2d 439, 442, *disc. review denied*, 349 N.C. 231, 515 S.E.2d 705 (1998).

*De novo* review is appropriate in the instant case, as plaintiff contends the trial court's decision was based on an incorrect "reading and construction of Rule 702," specifically the trial court's interpretation of the terms "clinical practice" and "general practitioner."[1] *See id.; see also Trapp v. Maccioli*, 129 N.C. App. 237, 239, 497 S.E.2d 708, 710, *disc. review denied*, 348 N.C. 509, 510 S.E.2d 672 (1998) (whether medical malpractice plaintiff could reasonably expect witness who reviewed complaint to qualify as expert witness under Rule 702(b), as required by N.C.R. Civ. P. 9(j), is question of law subject to *de novo* review). Accordingly, this Court must determine

(1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence.

---

1. We would not reach a different result herein if we were to apply the abuse of discretion standard.

*Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). Plaintiff herein did not assign error to the trial court's findings of fact. Thus, we presume the findings are supported by sufficient evidence, and they are binding on appeal. *Steadman v. Pinetops*, 251 N.C. 509, 514-15, 112 S.E.2d 102, 106 (1960).

The starting point for our analysis of the issues raised by plaintiff is Rule 702 itself. The "cardinal principle" of statutory construction "is to ensure accomplishment of the legislative intent." *Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998), *cert. denied,* —— U.S. ——, 143 L. Ed. 2d 671 (1999).

> To determine legislative intent, a court must analyze the statute as a whole, considering the chosen words themselves, the spirit of the act, and the objectives the statute seeks to accomplish.

*Brown v. Flowe*, 349 N.C. 520, 522, 507 S.E.2d 894, 895 (1998). Words not defined in the statute "are given their plain meaning so long as it is reasonable to do so." *Polaroid Corp.*, 349 N.C. at 297, 507 S.E.2d at 290.

We begin with an analysis of sections (b) and (c). Rule 702(b) is a default provision, applicable to all medical malpractice actions except those against "general practitioners," as provided in section (c). Pursuant to section (b)(1), if the defendant in a medical malpractice action is a specialist practicing in the area of his or her specialty, then any expert witness testifying as to the standard of care applicable to the defendant must also be a specialist; similarly, if the defendant is a general practitioner practicing in that area of medicine, the expert witness must be a general practitioner. Rule 702(c).

Portions of section (b) and (c) at first glance appear to overlap. By its terms, Rule 702(b) applies to all medical malpractice actions against any "health care provider." *See* N.C.G.S. § 90-21.11 (1999). Section (b)(2)(a) requires expert witnesses to have engaged in "active clinical practice of the same health profession" as the defendant, or, if the defendant is a specialist, in "active clinical practice of the same specialty" as the defendant. The first part of section (b)(2)(a), which applies to non-specialists only, thus could be construed to overlap with section (c), which contains a similar provision regarding "active clinical practice as a general practitioner," if the term "general practitioner" is equated with a non-specialist.

However, it appears the intent of the legislature was to limit the applicability of section (c) to physicians, as section (c)(2) refers

specifically to instruction of students "in the general practice of medicine." *See* N.C.G.S. § 90-18 (1999) (defining the "practice of medicine" to exclude the practice of, *inter alia*, dentistry, pharmacy, optometry, chiropractic, and nursing); *cf.* G.S. § 90-21.11 (defining health care provider as one who, *inter alia*, practices dentistry, pharmacy, optometry, chiropractic, or nursing). This interpretation avoids any potential redundancy. *See, e.g., State v. Bates*, 348 N.C. 29, 35, 497 S.E.2d 276, 279 (1998) (statute must be construed, if possible, to give meaning to all its provisions).

Thus, we interpret the statute to apply as follows: health care providers other than physicians are governed exclusively by section (b). Section (c) applies only to physicians who are "general practitioners," while section (b) applies only to physicians who are "specialists."

The terms "general practitioner" and "specialist" are not defined in Rule 702. We thus look to the "plain meaning" of these terms. *Polaroid Corp.*, 349 N.C. at 297, 507 S.E.2d at 290. Dictionaries may be used to determine the plain meaning of words. *Hunter v. Kennedy*, 128 N.C. App. 84, 86, 493 S.E.2d 327, 328 (1997).

"General practitioner" is variously defined as a physician "who does not limit his practice to a specialty," Webster's Third New International Dictionary 945 (1966), a "physician whose practice covers a variety of medical problems in patients of all ages," American Heritage College Dictionary 567 (3d ed. 1997), and a "physician who does not hold specialty qualifications, and who does not restrict his practice to any particular field of medicine," Vergil N. Slee, Debora A. Slee, & H. Joachim Schmidt, *Health Care Terms* 476 (3d ed. 1996) (hereinafter *Health Care Terms*).

"Specialist" is defined as a "physician whose practice is limited to a particular branch of medicine or surgery, esp. one certified by a board of physicians." American Heritage College Dictionary 1307; *see also* 5 J.E. Schmidt, Attorney's Dictionary of Medicine S-219 (1999) (defining specialist as a "medical practitioner who limits his practice to certain diseases . . .; a person who is a diplomate of one of the specialty boards"). Board certification in a speciality area of medicine is voluntary, and is available to physicians who, after graduating from medical school, complete a residency of at least three years, pass a written examination in the specialty, and in some cases, practice full-time in the specialty for an additional period of time following completion of the residency. *See* 1 American Board of Medical Specialties,

*The Official ABMS Directory of Board Certified Medical Specialists* xxi (32d ed. 1999); *see also* American Medical Association, *Physician Characteristics and Distribution in the U.S.* 5-6 (2000) (hereinafter *Physician Characteristics*). A licensed physician may practice in any specialty area, however, regardless of certification. *Physician Characteristics* at 6.

Our case law indicates that a physician who "holds himself out as a specialist" must be regarded as a specialist, even though not board certified in that specialty. *See Wall v. Stout*, 310 N.C. 184, 195, 311 S.E.2d 571, 578 (1984) (where defendant held himself out to be board-certified specialist in family practice, such defendant "is required to bring to the care of his patients more than the average degree of skill possessed by general practitioners"); *see also Belk v. Schweizer*, 268 N.C. 50, 56, 149 S.E.2d 565, 569 (1966) (physician "who holds himself out as specialist" must be held to higher standard than general practitioner); *Dunn v. Nundkumar*, 463 N.W.2d 435, 436-37 (Mich. Ct. App. 1990) (board certification not required to be "specialist;" physician who limits practice to obstetrics and gynecology is specialist in that field).

We thus hold that a doctor who is either board certified in a specialty or who holds himself out to be a specialist or limits his practice to a specific field of medicine is properly deemed a "specialist" for purposes of Rule 702. Actions by the legislature prior to passage of the amended Rule 702 support this interpretation. *See Utilities Com. v. Coach Co.*, 233 N.C. 119, 123, 63 S.E.2d 113, 117 (1951) (construing statute by reference to prior version of enacted bill). Several versions of House Bill 730, the bill that ultimately resulted in the amendment to Rule 702, were submitted to the House Select Committee on Tort Reform and the Senate Judiciary I Committee. In at least four of these preliminary drafts of the bill, section (b), governing specialists, separated specialists into two groups. For example, proposed committee substitute PCS6142 provided:

(b) In a medical malpractice action as defined in G.S. 90-21.11, a person shall not give expert testimony on the appropriate standard of health care as defined in G.S. 90-21.12 unless the person is a licensed health care provider in this State or another state and meets the following criteria:

(1) If the party against whom or on whose behalf the testimony is offered is a specialist, the expert witness must specialize in the

**FORMYDUVAL v. BUNN**

[138 N.C. App. 381 (2000)]

same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified or otherwise certified by a specialty health care group, the expert witness must be a specialist who is similarly certified in that specialty . . . .

This version of the bill indicates the legislature considered specialists to be of two categories: specialists who are board certified, and specialists who are not board certified. The final, adopted version of section (b) does not contain this division. Though the legislative history does not reveal the reason the division was removed, several committee members did express discomfort with the board certification language. *See* 26 April 1995 *Minutes of the House Select Comm. on Tort Reform.* One committee member specifically "questioned the reasoning for having to be board certified in order to be an expert witness." *Id.*

Regardless, had the legislature wished to limit the term "specialists" to only those physicians who are board certified, it had the language before it to do so. By removing the more restrictive category of "board certified" specialists from the statute, we believe the legislature expressed its intent that the term "specialist" include a broader category of physicians than only those who are board certified.[2]

We further believe that the legislature intended the term "specialist" to include a physician who is either board certified in a specialty or who holds himself out as a specialist or limits his practice to a specialty. This definition is dispositive of the case *sub judice*, and it is thus unnecessary for us to outline the contours of the term "general practitioner." We hold that all three of plaintiff's witnesses are specialists as that term is used in the statute. Thus, they are all disqualified from testifying against defendant pursuant to Rule 702(c). The trial court found as a fact, and plaintiff does not dispute, that Dr. Paschold is board certified in oncology, while Dr. Hammer is board certified in emergency medicine and family practice. By virtue of their board certifications, both doctors are specialists and thus may not testify against defendant, a general practitioner.

2. Though not at issue in the case herein, it appears the legislature also intended that board certified specialists would be able to testify against or on behalf of non-board certified specialists, and vice versa, with the restriction that the witness must "[s]pecialize in the same specialty" as the defendant, Rule 702(b)(1)(a), or "[s]pecialize in a similar specialty which includes . . . the performance of the procedure that is the subject of the complaint," Rule 702(b)(1)(b).

Plaintiff argues that because Dr. Paschold and Dr. Hammer are "more qualified than defendant" they should be able to testify against him. Such interpretation of Rule 702 is completely contrary to the intent of the statute. The language of the statute is unambiguous: only general practitioners are allowed to testify against general practitioners. Specialists, who are more qualified than general practitioners, may testify only against other specialists. This interpretation is consistent with N.C.G.S. § 90-21.12 (1999), which requires that the plaintiff in a medical malpractice action prove by the greater weight of the evidence that the care of the health care provider at issue "was not in accordance with the standards of practice among members of the same health care profession *with similar training and experience.*" G.S. § 90-21.12 (emphasis added).

As stated by another court, this rule

is designed to protect the defendant from being compared with the higher standard of care required from one who holds himself out as an expert in the field.

*Moore v. Foster*, 292 N.W.2d 535, 538 (Mich. Ct. App. 1980), *rev'd on other grounds*, 302 N.W.2d 146 (Mich. 1980); *see also* 19 April 1995 *Minutes of the House Select Comm. on Tort Reform* (sponsor of House Bill 730 noting that purpose of amendment to N.C.R. Civ. P. 9 is to insure that malpractice actions are "reviewed by qualified practitioners of a competence similar to" defendant of suit).

Plaintiff's third expert witness, Dr. McCaskill, is not board certified in any specialty. However, the trial court found, and again plaintiff does not dispute, that Dr. McCaskill has been "work[ing] on a full-time basis since 1973 as Chief of Emergency Medicine at Scotland Memorial Hospital and as an emergency department physician." Evidence was also introduced that Dr. McCaskill works part-time at a general medical clinic in Maxton, North Carolina. Further, plaintiff introduced evidence that Dr. McCaskill, when reporting to the North Carolina Medical Board, lists his primary specialty as "emergency medicine." We thus hold that Dr. McCaskill is a specialist in emergency medicine, in that he holds himself out to be such a specialist and largely limits his practice to that specialty.

Plaintiff contends Dr. McCaskill is a general practitioner because he has similar training to defendant and his work in the emergency room is sufficiently similar to that of a general practitioner. While it

FORMYDUVAL v. BUNN

[138 N.C. App. 381 (2000)]

appears that Dr. McCaskill's initial medical training was similar to defendant's, in that both completed medical school and a one year internship, we cannot agree that practicing in an emergency room equates to "[a]ctive clinical practice *as* a general practitioner." Rule 702(c)(1) (emphasis added). As the trial court found, Dr. McCaskill during the course of his practice has access to "laboratory resources, nursing personnel, active staff physicians, [and] intensive care support," resources which defendant in this case, and arguably most general practitioners, do not have. Further, emergency medicine is a specialty recognized by the American Board of Medical Specialties, thus indicating that the practice of emergency medicine itself is a specialized field.

It is also questionable whether Dr. McCaskill devoted the majority of his professional time during the year preceding the incident in question to the "active clinical practice" of medicine as required by Rule 702(c)(1). Clinical is defined as "based on or pertaining to actual experience in the observation and treatment of patients." 2 J.E. Schmidt, Attorney's Dictionary of Medicine C-310 (1999).

On *voir dire*, Dr. McCaskill testified that some of his duties as Chief of Emergency Medicine at Scotland Memorial were administrative in nature. Plaintiff's brief to this Court indicates that Dr. McCaskill spent only seven and one-half hours per week dealing "hands on [with] patients" at Scotland Memorial, and an additional five hours per week admitting patients seen at the Maxton clinic. This amounts to at most thirteen hours per week out of what plaintiff admits is Dr. McCaskill's normal forty-five to sixty hour work week. When asked on *voir dire* if he would agree "that in the year preceding August of 1993 you did not devote the majority of your time as a general practitioner," Dr. McCaskill answered, "That's true." However, the trial court did not make findings of fact on this issue, and our decision herein does not rest on this point.

To reiterate, we hold the trial court properly disqualified plaintiff's expert witnesses. As plaintiff tendered no other expert witness to testify on the standard of care applicable to defendant, the trial court also properly granted defendant's motion for directed verdict. *See Lowery v. Newton*, 52 N.C. App. 234, 237, 239, 278 S.E.2d 566, 570, 571 (directed verdict proper if plaintiff does not offer evidence on standard of care; standard of care in medical malpractice action must be established by expert witness), *disc. review denied*, 303 N.C. 711 (1981).

In closing, we are mindful of plaintiff's contention that there are virtually no general practitioners still practicing who could testify against each other, such that general practitioners "will be free to treat their patients negligently without having to worry about the consequences of any medical malpractice litigation." Without passing on the merits of this contention,[3] we do observe that the record on appeal is silent as to whether plaintiff sought to avail herself of Rule 702(e), which provides:

> Upon motion by either party, a resident judge of the superior court in the county or judicial district in which the action is pending may allow expert testimony on the appropriate standard of health care by a witness who does not meet the requirements of subsection (b) or (c) of this Rule, but who is otherwise qualified as an expert witness, upon a showing by the movant of extraordinary circumstances and a determination by the court that the motion should be allowed to serve the ends of justice.

For the reasons stated herein, the trial court is

Affirmed.

Judges WYNN and HORTON concur.

---

3. While there were no physicians in Columbus County in 1998 that identified themselves as general practitioners, there were thirty-one such physicians practicing in an eleven county region including and surrounding Columbus County. *See* N.C. Health Professions Data System, *N.C. Health Professions 1998 Data Book* 39, 138 (1998).