IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-520

No. COA20-898

Filed 2 August 2022

Pitt County, No. 19 CVS 2683

MELVA LOIS BANKS GRAY, as Administratrix of the Estate of STEVEN PHILIP WILSON, Plaintiff,

v.

EASTERN CAROLINA MEDICAL SERVICES, PLLC, *et al.*, Defendants.

Appeal by Plaintiff from order entered 7 July 2020 by Judge Jeffery B. Foster in Pitt County Superior Court. Heard in the Court of Appeals 3 November 2021.

*The Duke Law Firm NC, by W. Gregory Duke, for Plaintiff-Appellant.*

*Batten Lee, PLLC, by Gary Adam Moyers and C. Houston Foppiano, for Defendants-Appellees Eastern Carolina Medical Services, PLLC, and Mark Cervi, M.D.*

*Walker, Allen, Grice, Ammons, Foy, Klick & McCullough, L.L.P., by Elizabeth P. McCullough, for Defendant-Appellee Gary Leonhardt, M.D.*

*Huff Powell & Bailey PLLC, by Barrett Johnson and Katherine Hilkey-Boyatt, for Defendants-Appellees Carol Lee Keech, aka Carol Lee Oxendine; Charles Ray Faulkner, R.N.; Kimberly Jordan, R.N.; and Jacqueline Lymon, L.P.N.*

*Michael, Best, & Friedrich, LLP, by Carrie E. Meigs and Justin G. May, for Defendant-Appellee Donna McLean.*

COLLINS, Judge.

¶ 1    Melva Lois Banks Gray ("Plaintiff") brings this action for medical malpractice

as Administratrix of the Estate of Steven Philip Wilson. Plaintiff argues that the trial court erred by dismissing her complaint for failure to substantively comply with Rule 9(j) of the North Carolina Rules of Civil Procedure. Because Plaintiff could reasonably have expected her 9(j) expert to qualify as an expert witness under North Carolina Rule of Evidence 702, we reverse the trial court's order and remand for further proceedings.

## I. Factual and Procedural History

Plaintiff seeks redress for the allegedly deficient medical care Steven Philip Wilson received while in the custody of the Pitt County Detention Center ("PCDC") between 22 September 2016 and 16 November 2017. Wilson was detained at the PCDC on 22 September 2016. He had been diagnosed with pneumonia and prescribed antibiotics the week before he was detained. Wilson submitted at least nine Inmate Requests for Sick Call Visits between 23 September 2016 and 10 November 2016. Wilson was experiencing symptoms including coughing with mucus, congestion, fever, wheezing, lethargy, coarse breathing, flushed face, trouble sleeping, back pain, and elevated heart rate. He was prescribed an inhaler, over-the-counter pain medicine, and antibiotics. Wilson told medical staff that he was not feeling better, and progress reports indicate that his condition continued to worsen during those two months.

Wilson was transferred to the Greene County Jail on 10 November 2016. Upon

his admission, Wilson had a heavy cough and complained that he was short of breath, winded, and that the left side of his rib cage hurt. He was transported to Lenoir Memorial Hospital on 11 November 2016. At Lenoir Memorial Hospital, Wilson was noted to be in moderate respiratory distress and was diagnosed with acute left-sided empyema and sepsis secondary to left-sided empyema. He was transported to Vidant Medical Center ("Vidant") where he stayed from 11 November 2016 until 16 November 2016.

¶ 4        At Vidant, Wilson was diagnosed with septic shock due to staphylococcus, necrotizing pneumonia, acute respiratory failure, and acute kidney failure. Wilson was intubated, placed on a ventilator, given a tracheostomy, and had his left lung surgically removed. Wilson was discharged from Vidant on 16 December 2016 and incarcerated with the North Carolina Department of Corrections ("NCDC"). He was released from the NCDC on 16 November 2017. Wilson died on 18 October 2018 from an apparently unrelated drug overdose.

¶ 5        Plaintiff commenced this action by filing a complaint on 19 June 2019. Plaintiff named as defendants Eastern Carolina Medical Services ("ECMS") and two physicians, Dr. Gary Leonhardt and Dr. Mark Cervi. PCDC contracted with ECMS to provide medical care to persons detained at PCDC. ECMS was responsible for, among other things, physician services rendered to inmates, and diagnostic examinations, medical treatment, and health care services for inmates. Dr.

Leonhardt is a co-founder, owner, and staff physician at ECMS. He specializes in psychiatry and addiction medicine, practices as a general practitioner, and has experience in internal medicine. Dr. Cervi is a co-founder, director, and medical physician at ECMS. He specializes in internal medicine. Dr. Leonhardt and Dr. Cervi provided primary care to individuals detained at PCDC and supervised the ECMS medical staff during the time Wilson was an inmate at PCDC.

¶ 6 Plaintiff also named as defendants the following ECMS nurses who treated Wilson: Donna McLean, a nurse Practitioner ("NP"); Carol Keech, a licensed practical nurse ("LPN"); Charles Faulkner, a registered nurse ("RN"); Kimberly Jordan, an RN; and Jaqueline Lymon, a LPN.

¶ 7 Defendants moved to dismiss the complaint based on Plaintiff's failure to facially comply with Rule 9(j) of the North Carolina Rules of Civil Procedure. Plaintiff filed a voluntary dismissal of that suit on 18 September 2019 and filed a new complaint against the same Defendants on that day. Plaintiff alleged ordinary negligence and professional negligence/medical malpractice resulting in personal injury to Wilson, and sought compensatory and punitive damages.

¶ 8 In her complaint, Plaintiff alleged the following, pursuant to Rule 9(j):

> Plaintiff specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of

Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care. In addition, should a Court later determine that the person who has reviewed the medical care and all medical records pertaining to the alleged negligence herein that are available to the Plaintiff after reasonable inquiry, and who is willing to testify that the medical care did not comply with the applicable standard of care, does not meet the requirements of Rule 702 of the North Carolina Rules of Evidence, the Plaintiff will seek to have that person qualified as an expert witness by motion under Rule 702(e) of the North Carolina Rules of Evidence, and Plaintiff moves the Court (as provided in Rule 9(j) of the [North Carolina] Rules of Civil Procedure) that such person be qualified as an expert witness under Rule 702(e) of the [North Carolina] Rules of Evidence.

¶ 9    All Defendants answered and filed motions to dismiss, asserting, in part, that Plaintiff's complaint should be dismissed for failing to comply with Rule 9(j). In response to Defendants' interrogatories, Plaintiff identified William B. Hall, M.D., ("Dr. Hall") as the Rule 9(j) expert who had reviewed the medical care and medical records pertaining to the alleged negligence at issue, and who was willing to testify that the medical care did not comply with the applicable standard of care.

¶ 10    Dr. Hall is certified by the American Board of Internal Medicine in internal medicine, pulmonary disease, and critical care medicine. According to his curriculum vitae, during the year preceding Wilson's care at PCDC, Dr. Hall served as a pulmonary and critical care physician for UNC Rex Healthcare and the Medical

Director at both Rex Pulmonary Specialists and Rex Pulmonary Rehab in Raleigh, North Carolina. According to Plaintiff's response to Dr. Leonhardt's interrogatory, Dr. Hall "engages in the active clinical practice of pulmonology, internal medicine, and general primary care and supervises medical staff on a daily basis." Dr. Hall supervises medical staff, including registered nurses, physician assistants, and certified medical assistants, and is responsible for reviewing patient charts; reviewing his medical staff's work, notes, and proposed plans; and addressing medical concerns raised by his staff.

¶ 11 Defendants deposed Dr. Hall on 6 March 2020 "solely for the purpose of determining his qualifications and whether the plaintiff could have reasonably expected him to qualify pursuant to Rule 9(j)." At the deposition, Dr. Hall testified that after medical school he completed a residency in internal medicine and practiced for one year as a hospitalist–an internal medicine physician who works at a hospital. After that year, he completed a fellowship in pulmonology and critical care medicine and has, since 2010, practiced as a specialist in pulmonary and critical care medicine at REX Pulmonary Specialists and REX Hospital. Dr. Hall testified, "there's a big overlap between the pulmonary and the -- and the internal medicine. . . . I don't usually see people as a primary care physician but I often will do things in my clinic that straddle over from pulmonary into primary care . . . ."

¶ 12 After Dr. Hall's deposition, on 2 April 2020, Dr. Leonhardt filed a second

motion to dismiss, again asserting Plaintiff's failure to comply with Rule 9(j). ECMS and Dr. Cervi also filed on 1 June 2020 second motions to dismiss for Plaintiff's failure to comply with Rule 9(j).[1]

¶ 13   The trial court held a hearing on 23 June 2020 on the various motions filed by Defendants. The trial courted entered an Order[2] on 7 July 2020 dismissing Plaintiff's complaint with prejudice. Because the statute of limitations as to all Defendants had run at the time of the hearing, the trial court dismissed the matter with prejudice for failure to comply with Rule 9(j). Plaintiff appealed.

## II.   Discussion

¶ 14   Plaintiff first argues that the trial court erred by dismissing her complaint for failure to substantively comply with Rule 9(j). Specifically, Plaintiff argues that the trial court erroneously concluded that Plaintiff could not have reasonably expected Dr. Hall to qualify as an expert witness against Defendants pursuant to Rule 702.

---

[1] Dr. Leonhardt also filed a Motion to Strike on 26 November 2019. Further, ECMS and Dr. Cervi filed a Motion to Dismiss Plaintiff's Claims for Punitive Damages on 17 January 2020. Dr. Leonhardt also filed an Objection and Motion to Strike Portions of Plaintiffs Memorandum of Law in Opposition to Defendants' Motions to Strike and Motions to Dismiss and Select Exhibits and Motion to Strike Affidavit of William B. Hall, M.D., on 19 June 2020.

[2] The full title of the Order is "Order on Defendant Gary Leonhardt's Motion to Dismiss and Motion to Strike, Second Motion to Dismiss, and Objection and Motion to Strike Portions of Plaintiff's Memorandum of Law in Opposition and Select Exhibits, and Order on Defendants Mark Cervi, M.D. and Eastern Carolina Medical Services, PLLC's Motions to Dismiss and Order on Defendant Donna McLean, D.N.P., F.N.P.-B.C.'s Motion to Dismiss and Order on Defendants Keech/Oxendine; Faulkner; Jordan; and Lymon's Motion to Dismiss."

## A. Standard of Review

When a complaint that is facially valid under Rule 9(j) is challenged on the basis that the 9(j) certification is not supported by the facts, "the trial court must examine the facts and circumstances known or those which should have been known to the pleader at the time of filing, and to the extent there are reasonable disputes or ambiguities in the forecasted evidence, the trial court should draw all reasonable inferences in favor of the nonmoving party at this preliminary stage." *Preston v. Movahed*, 374 N.C. 177, 189, 840 S.E.2d 174, 183-84 (2020) (quotation marks and citations omitted).

> "When the trial court determines that reliance on disputed or ambiguous forecasted evidence was not reasonable, the court must make written findings of fact to allow a reviewing appellate court to determine whether those findings are supported by competent evidence, whether the conclusions of law are supported by those findings, and, in turn, whether those conclusions support the trial court's ultimate determination."

*Moore v. Proper*, 366 N.C. 25, 32, 726 S.E.2d 812, 818 (2012) (citation omitted); *see also Preston*, 374 N.C. at 189, 840 S.E.2d at 184. "[B]ecause the evidence must be taken in the light most favorable to the plaintiff, the nature of these 'findings,' and the 'competent evidence' that will suffice to support such findings, differs from situations where the trial court sits as a fact-finder." *Preston*, 374 N.C. at 189-90, 840 S.E.2d at 184.

¶ 16    "Rule 9(j) serves as a gatekeeper, enacted by the legislature, to prevent frivolous malpractice claims by requiring expert review before filing of the action." Vaughan v. Mashburn, 371 N.C. 428, 434, 817 S.E.2d 370, 375 (2018) (quoting Moore, 366 N.C. at 31, 726 S.E.2d at 817) (emphasis omitted).  The rule provides, in pertinent part:

> Any complaint alleging medical malpractice by a health care provider pursuant to [N.C. Gen. Stat. §] 90-21.11(2)a. in failing to comply with the applicable standard of care under [N.C. Gen. Stat. §] 90-21.12 shall be dismissed unless:
>
> > (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care[.]

N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) (2020).

**B. Defendants ECMS, Dr. Leonhardt, and Dr. Cervi**

¶ 17    Rule 702(b) of the North Carolina Rules of Evidence provides that a person shall not give expert testimony on the appropriate standard of care in a medical malpractice action unless the person is a licensed health care provider and the person meets the criteria set forth in the following two-pronged test:

> (1) If the party against whom . . . the testimony is offered is a specialist, the expert witness must:

a. Specialize in the same specialty as the party against whom . . . the testimony is offered; or

b. Specialize in a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients.

(2) During the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness must have devoted a majority of his or her professional time to either or both of the following:

a. The active clinical practice of the same health profession in which the party against whom . . . the testimony is offered, and if that party is a specialist, the active clinical practice of the same specialty or a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients; or

b. The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom . . . the testimony is offered, and if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

N.C. Gen. Stat. § 8C-1, Rule 702(b) (2020).[3]

---

[3] We note that, because Dr. Leonhardt and Dr. Cervi were not acting as "specialists" in providing and/or supervising Wilson's treatment, it is not clear that Rule 702(b) should apply to these defendants. Dr. Leonhardt asserts he is a specialist in psychiatry and addiction medicine but—relevant to this case—holds himself out as an internal medicine consultant to PCDC. The trial court found that while Dr. Leonhardt "is a physician and

### 1. *Rule 702(b)(1)a.: "Same Specialty"*

The trial court found, and Plaintiff does not dispute, that Dr. Hall does not specialize in the same specialty as either Dr. Leonhardt or Dr. Cervi.

### 2. *Rule 702(b)(1)b.: "Similar Specialty"*

Plaintiff disputes the trial court's finding that Dr. Hall does not practice in a similar specialty as either Dr. Leonhardt or Dr. Cervi.

The test under Rule 9(j) is whether, at the time of filing the complaint it would have been reasonable for Plaintiff to expect Dr. Hall to qualify as an expert, not whether he would actually qualify, under Rule 702. *See Moore*, 366 N.C. at 31, 726 S.E.2d at 817 ("[T]he preliminary, gatekeeping question of whether a proffered expert witness is 'reasonably expected to qualify as an expert witness under Rule 702' is a different inquiry from whether the expert *will actually* qualify under Rule 702." (citing N.C. Gen. Stat. § 1A-1, Rule 9(j)(i))). "[T]he trial court must examine the facts and circumstances known or those which should have been known to the pleader at the time of filing, and to the extent there are reasonable disputes or ambiguities in

specialist in psychiatry and addiction medicine," his "care as a specialist in psychiatry and addiction medicine was not alleged to be at issue in the complaint." Similarly, Dr. Cervi asserts he is a specialist in internal medicine but—relevant to this case—holds himself out as a primary care or family practice provider. The trial court found that "Dr. Cervi is an internal medicine physician and was providing primary care to inmates at PCDC during the applicable time period," and his "care as a specialist in internal medicine was not alleged to be at issue in the complaint[.]" Because Plaintiff did not raise the issue of the applicability of Rule 702(b) below or on appeal, we will analyze the facts and circumstances relevant to these defendants in light of Rule 702(b).

the forecasted evidence, the trial court should draw all reasonable inferences in favor of the nonmoving party at this preliminary stage." *Preston*, 374 N.C. at 189, 840 S.E.2d at 183-84 (quotation marks and citations omitted).

¶ 21 Neither the trial court nor Defendant cited specific authority, of which Plaintiff knew or should have known, holding that a physician who is board certified in internal medicine, pulmonary disease medicine, and critical care medicine providing and supervising the care of a pneumonia patient is not practicing in a similar specialty to that of an internist or a general practitioner providing and supervising the care of a pneumonia patient. Furthermore, the trial court's findings of fact impermissibly draw inferences against Plaintiff.

¶ 22 In Finding 4, the trial court found, "Dr. Hall did not form any opinions as to any care Dr. Leonhardt provided as a primary care provider and/or general practitioner at the PCDC." Likewise, in Finding 5, the trial court found, "Dr. Hall [did not] form any opinions as to any care Dr. Cervi provided as an internal medicine specialist at the PCDC." However, Defendants repeatedly objected during Dr. Hall's Rule 9(j) deposition to any questions related to the opinions Dr. Hall formed as outside the scope of the deposition. Thus, Dr. Hall's deposition transcript does not reflect whether Dr. Hall formed any opinions and does not reflect that he had not formed any opinions.

¶ 23 The record evidence shows that Dr. Hall testified that he had been asked to

provide opinions on the standard of care for the treatment of a pneumonia patient, the standard of care for the physicians supervising the medical staff, and the standard of care for the medical staff providing that treatment. This is corroborated by Plaintiff's responses to Defendants' Rule 9(j) interrogatories. Dr. Hall further testified that his preliminary pre-suit review of the records was to review the course of care provided by the entire medical team to treat Wilson's pneumonia and determine whether that care met the standard. Dr. Hall articulated specific criticisms of Dr. Leonhardt's and Dr. Cervi's supervision of Wilson's treatment in his interrogatory answers, including as follows:

> When recurrent tachycardia, recurrent fever, and persistent cough was identified in examinations conducted on Steven Wilson, as a patient with a report of prior pneumonia, Steven Wilson should have received a chest x-ray (which was ordered and later cancelled by Pitt County Detention Center), routine labs, such as a complete blood count, and/or additional antibiotic treatment. Such additional treatment was necessary to determine the extent of Steven Wilson's condition and to prevent the deterioration of Steven Wilson's condition that led to necrotizing pneumonia. The failure of ECMS, ECMS agents, representatives, and/or employees, and Dr. Cervi, and Dr. Leonhardt to properly supervise the medical staff at PCDC, review the records and recurrent health concerns of Steven Wilson; identify the need, scheduling, administering, and coordinating of proper non-emergent and emergency medical care rendered to Steven Wilson; provide proper care during such sick calls to Steven Wilson; identify the need for and coordinate proper diagnostic tests and examinations for Steven Wilson; identify the need for and coordinate the administration of appropriate

> medications and consultations with specialty physicians
> for Steven Wilson; and identify the need for and coordinate
> an inpatient hospitalization for Steven Wilson fell below
> the standard of care.

Accordingly, Findings 4 and 5 impermissibly draw inferences against Plaintiff.

¶ 24      In Finding 14, the trial court found "Dr. Hall did not practice in a similar specialty as any of the defendants which included within it the primary care of patients during the applicable period." To the extent this constitutes a finding of fact it impermissibly draws inferences against Plaintiff. Dr. Hall testified that although his practice was not a primary care practice, his practice included elements of primary care as part of his treatment of patients.

¶ 25      To the extent this finding is more properly classified as a conclusion of law, it misapplies the law in two ways. First, under Rule 9(j), it is not whether Dr. Hall actually practices in a similar specialty but rather whether it was reasonable for Plaintiff to expect Dr. Hall to qualify as one practicing in a similar specialty. Second, under Rule 702(b)(1)b., the analysis is whether the proffered expert "[s]pecialize[s] in a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and ha[s] prior experience treating similar patients." N.C. Gen. Stat. § 8C-1, Rule 702(b)(1)b.

¶ 26      Here, the record reflects the "procedure" at issue is the treatment provided to Wilson for pneumonia and whether the treatment provided, including the supervision

of that treatment, met the standard of care. At this preliminary stage, the record reflects that Dr. Leonhardt and Dr. Cervi were physicians holding themselves out as internal medicine practitioners, albeit in a primary care practice. *See Formyduval v. Bunn*, 138 N.C. App. 381, 388, 530 S.E.2d 96, 101 (2000) ("Our case law indicates that a physician who 'holds himself out as a specialist' must be regarded as a specialist, even though not board certified in that specialty." (citations omitted)). In the course of their practice, they engaged in the practice of internal medicine–including, as it relates to this case, as supervising physicians responsible for the course of care for Wilson's pneumonia.

¶ 27        Dr. Hall is board certified in internal medicine, pulmonary disease medicine, and critical care medicine and specializes in pulmonary disease and critical care medicine. Dr. Hall's deposition testimony supports the inference that pulmonary disease medicine and critical medicine are sub-specialties of internal medicine. In his clinical practice, he regularly treats patients with pneumonia. Drawing all reasonable inferences in Plaintiff's favor from these facts, it was reasonable for Plaintiff to expect Dr. Hall, who is board certified in internal medicine and pulmonary disease and who regularly treats pneumonia patients, to be deemed similar in specialty to internal medicine practitioners who provided care for a pneumonia patient. *Cf. Sweatt v. Wong*, 145 N.C. App. 33, 38, 549 S.E.2d 222, 225 (2001) (general surgeon who was board certified in laparoscopic procedures and who practiced as an

emergency room physician qualified as an expert against a general surgeon who performed laparoscopic surgery where both engaged in the same diagnostic procedures and the proffered expert had clinical diagnostic practice including with patients showing similar signs and symptoms as decedent); *Trapp v. Maccioli*, 129 N.C. App. 237, 240-41, 497 S.E.2d 708, 710-11 (1998) (reasonable to expect an emergency room physician who performed the same procedure to qualify as an expert against an anesthesiologist for purposes of Rule 9(j)). There is nothing in the record at this stage that would suggest a pulmonologist would treat pneumonia in any manner different than an internist (or a psychiatrist/addiction specialist/internal medicine consultant) acting as a primary care physician—or even more precisely at this stage, that there would be any reasonable expectation on the part of a plaintiff that there would be any difference.

¶ 28        In Finding 15, the trial court made a finding identical to Finding 14, but with the added proviso that Dr. Hall did not practice "in a similar specialty as any of the defendants which included within it the primary care of patients *in a detention center or correctional setting* during the applicable period." (Emphasis added). Similarly, the trial court found in Finding 22 that "Dr. Hall has never cared for patients *in a detention or correctional setting* and did not care for such inmates during the applicable time period." (Emphasis added) The trial court's order does not explain the significance of this added proviso, but it appears the trial court intended this

finding to relate to whether Dr. Hall had "prior experience treating similar patients."

¶ 29        Rule 702(b)(1)b. requires an expert witness who is not in the "same specialty" to have "prior experience treating similar patients" as the party against whom the testimony is offered. A "similar patient" in this context is a patient with similar medical conditions and treatment needs. Rule 9(j) does not require an expert witness to practice in the same, or even similar, setting. Nonetheless, Dr. Hall testified that he has experience treating inmates brought to the hospital for treatment and his practice was to treat them in the same manner as any other patient, notwithstanding the fact they may be handcuffed and under guard.

¶ 30        Moreover, to the extent the trial court's findings conflate the requirements of Rule 702(b) with the "same or similar community" standard of care under N.C. Gen. Stat. § 90-21.12, the relevant community in this case is Pitt County, North Carolina, or similar communities, as evidenced by Dr. Cervi's interrogatory to Dr. Hall:

> Explain in detail any and all opportunities you have had to learn the standard of care applicable to medical professionals or entities operating in Pitt County, North Carolina, or similar communities, and for each "similar community," identify the community and provide the details that make these communities similar.

In response, Dr. Hall verified that he is familiar with the standard of care within Pitt County and medical communities similarly situated to Pitt County, and specifically articulated the basis of his familiarity.

¶ 31    The trial court thus impermissibly drew inferences against Plaintiff by finding that Dr. Hall did not practice in a similar specialty to that of Dr. Leonhardt and Dr. Cervi.

### 3. *Rule 702(b)(2)*

¶ 32    Rule 702(b) is conjunctive and requires a proffered expert to meet the requirements laid out in subsections (b)(1) and (b)(2). Rule 702(b)(2)[4] requires an expert witness offering testimony against a specialist to have devoted a majority of their professional time "[d]uring the year immediately preceding the date of the occurrence that is the basis for the action" to "the active clinical practice of the same specialty or a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients" and/or the "instruction of students in . . . an accredited health professional school or accredited residency or clinical research program in the same specialty" as the party against whom the testimony is offered. N.C. Gen. Stat. § 8C-1, Rule 702(b)(2).

¶ 33    We have already concluded that it was reasonable for Plaintiff to expect Dr. Hall to be deemed similar in specialty to Dr. Leonhardt and Dr. Cervi. As the record

---

[4] We again note that because Dr. Leonhardt and Dr. Cervi were not acting as "specialists" in providing and/or supervising Wilson's treatment, it is not clear that the more stringent requirements set forth in Rule 702(b)(2)a. and b. apply in this case.

shows, Dr. Hall spent the majority of his time since 2010, which includes the year preceding Wilson's care, in active clinical practice as a pulmonologist and critical care medicine specialist. Indeed, as the trial court found, "Dr. Hall is a physician and practices as a pulmonologist and critical care medicine specialist and the majority of his professional time has been spent practicing in those specialties since 2010." Accordingly, Dr. Hall devoted a majority of his professional time during the year immediately preceding the date of Wilson's care to "the active clinical practice of . . . a similar specialty which includes within its specialty the" care of pneumonia patients and has "prior experience treating similar patients." *Id.*

¶ 34    The trial court's conclusion that "Plaintiff could not have reasonably expected Dr. Hall to qualify as an expert witness against [Defendants ECMS, Dr. Leonhardt, and Dr. Cervi] pursuant to Rule 702(b)-(d) based on what she knew or should have known at the time of filing of the Complaint, and therefore, failed to substantively comply with Rule 9(j)" is not supported by the findings or the evidence. The trial court thus erred by dismissing Plaintiff's complaint against Defendants ECMS, Dr. Leonhardt, and Dr. Cervi for failure to substantively comply with Rule 9(j)(1).

**C. Defendants McLean, Keech, Faulkner, Jordan, and Lymon**

¶ 35    Plaintiff also argues that the trial court erred by dismissing her complaint against nurses McLean, Keech, Faulkner, Jordan, and Lymon for failure to comply with Rule 9(j).

¶ 36        North Carolina Rule of Evidence 702(d) sets forth the conditions a proffered expert must meet to testify to the standard of care against nurses. Rule 702(d) provides:

> Notwithstanding subsection (b) of this section, a physician who qualifies as an expert under subsection (a) of this Rule and who by reason of active clinical practice or instruction of students has knowledge of the applicable standard of care for nurses, nurse practitioners, certified registered nurse anesthetists, certified registered nurse midwives, physician assistants, or other medical support staff may give expert testimony in a medical malpractice action with respect to the standard of care of which he is knowledgeable of nurses, nurse practitioners, certified registered nurse anesthetists, certified registered nurse midwives, physician assistants licensed under Chapter 90 of the General Statutes, or other medical support staff.

N.C. Gen. Stat. § 8C-1, Rule 702(d) (2020).

¶ 37        The trial court found the following facts:

> 17. Dr. Hall did not supervise the primary care of patients provided by FNPs, RNs, and/LPNs during the applicable time period. ·
>
> 18. Dr. Hall did not know the qualifications of the nurse practitioner he supervised in his private practice of pulmonology.
>
> 19. Dr. Hall admitted that there are different types of nurse practitioners and that the training of nurse practitioners varies by type.
>
> 20. Dr. Hall did not practice family medicine or supervise a nurse practitioner in the practice of family medicine.
>
> 21. Dr. Hall has never supervised the primary care of patients provided by FNPs, RNs, and/LPNs in a detention

or correctional setting, including during the applicable
time period.

First, that Dr. Hall did not know the qualifications of the nurse practitioner he supervised and admitted there are different types of nurse practitioners with different training is immaterial to the inquiry before us.[5] The focus of the remainder of the trial court's findings in relation to Dr. Hall's experience supervising nursing staff and nurse practitioners is on the fact Dr. Hall did not practice in a family practice, general primary practice, or specifically in a detention center. The inference—again drawn against Plaintiff—is that these settings are so dissimilar from Dr. Hall's clinical and hospital practices, particularly as it relates to the course of treatment for pneumonia patients, that it would be unreasonable for Plaintiff to expect Dr. Hall to qualify as an expert. Accepting these practices may not be the *same*, there is nothing in the record to support the inference they are not *similar* for purposes of meeting the requirements of Rule 9(j). Defendants point to no authority to support their position that under the circumstances present in this case it would be unreasonable to expect Dr. Hall to qualify as an expert here.

To the contrary, the evidence at this preliminary stage reflects that Dr. Hall has experience regularly supervising nursing staff and working with nurse

---

[5] Defendants cite no authority requiring a physician to identify specific credentials of individual nursing providers in order to survive dismissal under Rule 9(j).

practitioners and others in both the clinical and hospital setting, including monitoring ongoing treatment of patients as a supervising physician, in addition to his role as the medical director of his clinical practice implementing and monitoring the procedures and overall standard of care. The question under Rule 702(d) is, by reason of his clinical practice, whether Dr. Hall has knowledge of the applicable standard of care for nursing staff and nurse practitioners. The evidence of record at this stage is that in his practice Dr. Hall regularly supervises nursing staff and works in conjunction with nurse practitioners to provide treatment for pulmonary conditions (of which pneumonia is one). Moreover, it is evident from his limited testimony that Dr. Hall, again based on his own clinical experience, is aware of different types of nursing providers and the roles they play in patient care which he oversees. From this, the proper inference to be drawn is that it is reasonable to expect Dr. Hall to qualify as an expert based on his clinical experience in a similar specialty which also includes within that specialty the treatment of pneumonia patients.

¶ 40    The trial court's conclusion that "Plaintiff could not have reasonably expected Dr. Hall to qualify as an expert witness against the defendants pursuant to Rule 702(b)-(d) based on what she knew or should have known at the time of filing of the Complaint, and therefore, failed to substantively comply with Rule 9(j)" is not supported by the evidence, the properly drawn inferences in favor of Plaintiff therefrom, or the findings. The trial court thus erred by dismissing Plaintiff's

complaint against Defendant nurses McLean, Keech, Faulkner, Jordan, and Lymon for failure to substantively comply with Rule 9(j)(1).

We do not reach Plaintiff's argument that the trial court erred by denying her pending motion to qualify Dr. Hall as an expert under Rule 9(j)(2) and Rule 702(e).

### III.   Conclusion

For the foregoing reasons, we reverse the trial court's order dismissing Plaintiff's complaint for failure to comply with the provisions of Rule 9(j) of the North Carolina Rules of Civil Procedure and remand to the trial court for further proceedings.

REVERSED AND REMANDED.

Judges HAMPSON and CARPENTER concur.